# MITCHELL, Respondent, v. CHICAGO & ALTON RAILWAY COMPANY, Appellant.

### St. Louis Court of Appeals, June 23, 1908.

1. **CARRIERS OF PASSENGERS: Freight Trains: Degree of Care: Assumption of Risk.** A passenger in taking passage upon a freight train necessarily assumes the perils incident to traveling on such trains; nevertheless, when a railroad company accepts passengers on freight trains, it assumes towards such passengers an obligation to exercise the same high degree of care as it does in carrying passengers on regular passenger trains, the only difference being the incidental hazards assumed by a passenger on the freight train.

2. ————: ————: ————: **Prima-Facie Case.** Where a portion of a freight train, in coupling, was driven against another section of the same train, to which a caboose containing passengers was attached, with such force as to hurl passengers from their seats and one of them through the door of the car on to the ground, overturn the water tank, jar papers from the conductor's desk and pigeon holes, and lamps from their positions, and injure passengers seated in the car so as to produce headaches, lame backs, etc., this was sufficient to warrant a finding that the shock and jar was unusual and extraordinary, showing negligence on the part of those in charge of the train.

3. ————: ————: ————: **Res Ipsa Loquitur.** In such case, where the facts in proof showed an unusual and extraordinary jar such as to injure a passenger, one which would not happen if those having the management of the train had used proper care, the doctrine of *res ipsa loquitur* applies.

4. ————: ————: ————: **Contributory Negligence.** And the fact that it was shown, in an action by the passenger injured in such case, that he was seated on a box near the open door of the caboose so that he was jarred out of the car, did not warrant a ruling that as a matter of law he was guilty of contributory negligence which would prevent his recovery for the injuries received; the danger which he might expect from such a position was not so obvious that an ordinarily prudent man would not assume it had the managers of the train not been guilty of negligence.

5. ————: ————: **Negligence and Contributory Negligence: Instruction.** An instruction in such case which authorized a verdict for the defendant if the plaintiff knew the position he assumed was dangerous and by reason of taking it he was

thrown by the jerk and jar of the coupling, was properly refused because it left out of consideration the element of reasonable care on the part of the plaintiff, notwithstanding any negligence of which the defendant was guilty.    Such instruction was properly modified by inserting the words "usual and ordinary" as modifying the word "jerk," in that form the instruction would not permit a verdict for the defendant in any case if it was not guilty of negligence.

Appeal from Audrain Circuit Court.—*Hon. Jas. D. Barnett,* Judge.

AFFIRMED.

*John T. Baker* and *Scarritt, Scarritt & Jones* for appellant.

Defendant's peremptory instruction should have been given because plaintiff failed to prove any negligence on the part of defendant.    Not a witness pretends to testify that any improper thing was done by the train crew in making the coupling in question. Hedrick v. Railroad, 195 Mo. 104; Wait v. Railroad, 165 Mo. 612; Bartley v. Railroad, 148 Mo. 124; Hite v. Railroad, 130 Mo. 132; Portuchek v. Railroad, 101 Mo. App. 52; Erwin v. Railroad, 94 Mo. App. 291; Saxton v. Railroad, 98 Mo. App. 494; Shields v. Railroad, 87 Mo. App. 646; Guffey v. Railroad, 53 Mo. App. 462; Olds v. Railroad, 172 Mass. 73; Railroad v. Arnol, 144 Ill. 261.    From a great number of cases holding that a passenger is guilty of contributory negligence if he voluntarily assumes an unnecessarily hazardous position on a train, the following may be cited: Aufdenberg v. Railroad, 132 Mo. 565; Harris v. Railroad, 89 Mo. 233; Smotherman v. Railroad, 29 Mo. App. 265; Ashbrook v. Railroad, 18 Mo. App. 290; Tuley v. Railroad, 41 Mo. App. 436; Carroll v. Transit Co., 107 Mo. 653; Railroad v. Rice, 9 Tex. App. 509; Wallace v. Railroad, 98 N. C. 494; Railroad v. Ferguson, 70 Va. 241; Hickey v. Railroad, 14 Allen 431.

*P. H. Cullen* for respondent.

The proof in this case showed an extraordinary and unusually severe jolt and made at a time when defendant knew that passengers were in the compartment from which plaintiff was thrown and hence made a prima-facie case of negligence. Harris v. Railroad, 89 Mo. 235; Murphy v. Railroad, 43 Mo. App. 478; Dougherty v. Railroad, 9 Mo. App. 478; Dougherty v. Railroad, 81 Mo. 325; Guffey v. Railroad, 53 Mo. App. 465; Dorsey v. Railroad, 83 Mo. App. 528; Tuley v. Railroad, 41 Mo. App. 436. Under the rules of logic and of law plaintiff made a prima-facie case of negligence. Fullerton v. Railroad, 84 Mo. App. 499. The same degree of care is due a passenger on a freight train that is due a passenger on a regular train; except, passengers on freight trains accept and acquiesce in the usual incidents and conduct of a freight train, managed by prudent men. Vancleve v. Railroad, 107 Mo. App. 96; Wait v. Railroad, 165 Mo. 621; McGee v. Railroad, 92 Mo. 208; Whitehead v. Railroad, 99 Mo. 263; Gufft v. Railroad, 53 Mo. App. 462; Wait v. Railroad, 65 S. W. 1028; Erwin v. Railroad, 68 S. W. 88. And the same presumptions arise as in case of regular passengers. Woolery v. Railroad, 107 Ind. 381; 27 Am. and Eng. R. Cas., 210; 57 Am. 114; 8 N. E. 226; Thomp., Neg. (2 Ed.), secs. 2901 to 2907.

NORTONI, J.—This is an action for damages alleged to have accrued to plaintiff because of personal injuries received through being precipitated from his seat in the caboose of defendant's freight train. Plaintiff recovered and defendant prosecutes the appeal.

The evidence tended to prove that defendant maintains a branch line of its railroad from Mexico to Cedar City in this State, upon which it operates a a freight train with a caboose attached for the pur-

132 App—10

pose of carrying passengers.    The plaintiff became a
passenger on this train at New Bloomfield, destined
to the city of Mexico. The caboose is separated into
two compartments by means of a partition.    About
two-thirds of the car is provided with seats for pas-
sengers and the remaining one-third thereof occupied
for the purpose of carrying express and United States
mail as well as passengers.    On either side of the car
there is a door about five feet in width.    On the date
in question, each of these doors was standing open,
as is usual in the summer time.    Upon entering the
car, plaintiff chose a seat upon the expressman's box
or trunk near one of these doors and was there seated
when the conductor collected his fare.    The train
progressed to the city of Fulton, at which station it
stopped for some time for the purpose of transacting
business.    While the locomotive was engaged in
switching at Fulton, plaintiff went out upon the de-
pot platform for the purpose of purchasing a news-
paper and while there, observed that the caboose was
standing with about six cars on the main line of the
track and the locomotive, with other cars attached there-
to, was detached from that portion of the train to
which the caboose was connected.    The locomotive
was engaged in switching and picking up several cars
of stock.    Plaintiff returned to the caboose and re-
sumed his seat as before, upon the expressman's box.
Other passengers were occupying that portion of the
car as well, and he was engaged in conversation with
a gentleman who was leaning against the partition of
the car.    It is proper to say here that the two com-
partments of the car communicated by means of a
door which remained open, and that the compartment
occupied for the purpose of express in which the plain-
tiff was seated, was constantly used for passenger ser-
vice as well.    The train was headed northward.    The
expressman's box on which the plaintiff was seated

was situate immediately adjacent to and on the east side of the car and also immediately north of the open door, which was about five feet in width, on the east side of the car. In this situation, plaintiff was seated with his back to the northward, the direction the train was going, with his feet to the southward, and more particularly directed toward the center of the car. While thus seated and in conversation with his fellow-passenger, the locomotive with about six cars attached, endeavoring to make an automatic coupling, backed with great force against the freight cars to which the caboose was attached, and thereby precipitated plaintiff from his seat through the side door of the car onto the ground, inflicting the injuries complained of. The evidence tended to prove that this coupling was made with great force and produced an extraordinary jerk, jar and rebound of the caboose. The plaintiff and several passengers gave evidence to the effect that although they were familiar with the operation of freight trains and frequent passengers thereon, it was the most severe and extraordinary jerk they had ever experienced. Plaintiff testified substantially that the jar came just like a crash and threw him off of the box, out of the door onto the ground. There was a loud noise. It was almost like a wreck. It was the most severe jerk he had ever experienced riding on any kind of train and threw him across the floor and then hurled him out of the side door. Another passenger who was seated in the passenger compartment, said he rode on freight trains a great deal and had "never felt a more severe jar except once at Joliet, when the engineer knocked out a drawhead." The effect of the jar was very great, and caused him to suffer backache and headache so that he could not sleep that night or the next. Another witness said it was "almost like a collision and threw the passengers around right smart," and a ten-gallon water keg con-

taining ice and water was overturned and the water ran over the floor. It knocked papers out of the conductor's desk and pigeon-holes, jarred the lamp chimneys loose from their clamps near the ceiling of the car and jarred a pair of gloves off the conductor's desk. It caused him to have a headache. He testified he had ridden on freight trains considerably and had observed them making couplings, but that this was the heaviest jar he had ever experienced. All of the witnesses testified that besides precipitating the plaintiff from his seat through the door of the car onto the ground, the effect of the collision was sufficient to and did overturn the water keg in the car, jarred the lamp chimneys from the clamps provided to hold them in position, as well as causing numerous papers and a pair of gloves on the conductor's desk and other papers in pigeon-holes, to fall and scatter over the floor of the car. There was no other evidence tending to support the allegations of negligence of the defendant than that above stated. It is therefore argued on the part of the defendant that the court should have peremptorily directed a verdict for it for the reasons: first, that the case is devoid of evidence tending to prove negligence on the part of defendant with respect to a defective track, imperfections in the car or apparatus, or unskilful handling of the locomotive or cars by the engineer or other trainmen; and second, that the doctrine of *res ipsa loquitur* is not pertinent to the facts in proof. It is said even though the law imposes a high degree of care upon the defendant in favor of the passenger on a freight train, as it does on other passenger conveyances, that it is not responsible for injuries inflicted resulting from the usual jerks and jars incident to their operation. In other words, the argument invokes the rule to the effect that a person, by taking passage on a freight train, assumes all of the risks and inconveniences ordinarily

incident to the operation of trains of that character. Indeed, it is the law that persons taking passage upon freight trains, assume such risks and hazards as are ordinarily incident to the operation of such trains. In the very nature of things, there cannot be the same immunity from peril in traveling upon freight trains as there is in traveling upon passenger trains. Nevertheless, if the carrier accepts passengers on such trains, it thereby assumes toward its patrons an obligation of a high degree of care, precisely as it does when prosecuting its calling of carrying passengers on its regular passenger trains. The measure of care, however, is to be adjusted with respect to the circumstances attending the different modes of carriage and the incidental hazards assumed by passengers on freight trains. The net result with respect to the safety of the passenger may be and no doubt is wholly different, because of the inherent hazard incident to the operation of one train and not to the other. It is this hazard which the passenger assumes by taking passage on a freight train, the operation of which he fully knows and understands to be subject to severe jerks and many inconveniencies. The carrier is responsible, however, for its negligence in the operation of a freight train precisely as it is in the operation of its passenger train, and in no instance does a passenger assume the hazard and peril arising from the negligence or want of proper care of those in charge of the freight train. [Hedrick v. Railroad, 195 Mo. 104, 93 S. W. 268; Wait v. Railroad, 165 Mo. 612, 65 S. W. 1028; Erwin v. Railroad, 94 Mo. App. 289, 68 S. W. 88; Hawk v. Railroad, — Mo. —; 108 S. W. 1119.]

The defendant relies upon the cases above cited to support its argument here to the effect that the evidence entirely fails to show negligence on its part. In each of those cases, the evidence tended to show only an ordinary and usual jerk of the train, such

Mitchell v. Railroad.

as is ordinarily incident to the taking up or running out of slack in long freight trains. Such was the case too of Duffy v. Railroad, 53 Mo. App. 462. There can be no doubt that the law was accurately declared in those cases to the effect that the plaintiffs were not entitled to recover and this, for the reason, if none other, that the passengers had accepted the risk of such jerks and jars as were ordinarily incident to the operation of the trains in question. The rule is well settled to that effect, and upon sound principle it could not be otherwise. The facts in proof in the case now under advisement, extend quite beyond the usual and ordinary jerks incident to the operation of a freight train, however, for to say otherwise would be to declare that it was a usual and ordinary occurrence in the coupling of trains, to produce such a collision as hurls passengers from their seats through the doors of the car onto the ground, overturns water-kegs, jars papers from the conductor's desk, pigeon-holes, and the lamps from their positions. And too, that it is a usual and ordinary occurrence for freight trains to make their coupling in such a manner as to inflict injury upon passengers seated in the cars, sufficient to produce headache, lame backs and the loss of sleep for two successive nights. Common knowledge in that behalf points such to be more than the result of an ordinary and usual jerk of a freight train operated without negligence. We are fully persuaded that although there was no proof of a specific negligent act on the part of those operating the train, the facts above related are amply sufficient to authorize a legitimate inference of negligence on the part of the engineer and those engaged in the coupling, constituting substantial evidence in support of the verdict. The court has given a like judgment upon facts less persuasive heretofore. [Dorsey v. Railroad, 83 Mo. App. 528.] If the jerk was extraordinary and

unusual, it tends to prove negligence in the operation
of the train.     [Bartley v. Railroad, 148 Mo. 124-140,
49 S. W. 840.]

As to the proposition presented with respect to
the doctrine of *res ipsa loquitur.*     It is true our Su-
preme Court said, in Hedrick v. Railroad, 195 Mo.
104, that the doctrine of *res ipsa loquitur* did·not ob-
tain in aid of the plaintiff in that case.     As we view
it, the judgment in that case was entirely sound in
this respect for the evidence developed upon the trial
presented nothing more than the ordinary and usual
jolt and jar which attends the operation of.a freight
train, and therefore fell short of pointing negligence
on the part of defendant, especially so when consid-
ered in connection with the risks ordinarily incident
to such travel and assumed by the passenger.     The
judgment that the doctrine of imputable negligence
did not obtain in favor of the plaintiff on those facts
is entirely without influence here for the reason the
facts in proof in this case show an extraordinary and
unusual occurrence in the operation of even a freight
train.     The rationale of the doctrine *res ipsa loquitur*
is that in some cases the very nature of the act com-
plained of may, of itself, and through the presump-
tion it carries, supply the requisite proof of negli-
gence.     The sound rule on the subject declared in an
early case and often approved by the courts, is: "Where
the thing is shown to be under the .management of de-
fendant or its servants, and the accident is such as,
in the ordinary course of things, does not happen if
those who have the management use proper care, it
affords reasonable evidence, in the absence of expla-
nation by defendant, that the accident arose from want
of care."     [Scott v. London, etc., Dock Co., 3 Hurlst. &
C. 596; Dougherty v. Railroad, 9 Mo. App..478, 81 Mo.
325; Trotter v. Railroad, 122 Mo. App. 405,·99 S. W.
508; St. Clair v. Railroad, 122 Mo. App. 519, 99 S. W.

775; Labatt, Master & Servant, sec. 834; 21 Am. and Eng. Ency. Law (2 Ed.), 512, 513.]    It seems that if there be any group of facts to which the doctrine referred to is pertinent at all, it is to those now under consideration, for there appears in proof the several elements essential to invoke it.    The locomotive and train were entirely under the management of the defendant's servants.    The injuries and results entailed from the coupling of the cars or collision in proof, are such as in the ordinary course of things, do not happen if those who are managing the coupling, use proper care, for it is certainly true that by exercising proper care in that behalf, the coupling of a freight train is ordinarily made without producing a collision sufficient to entail the results developed in the proof now before us.    The courts have given judgments to the effect that the doctrine of *res ipsa loquitur* does obtain and that negligence is imputed to defendant on facts almost identical, or at least, in no respect materially different from those before the court.    [Murphy v. Railroad, 43 Mo. App. 342; Dougherty v. Railroad, 9 Mo. App. 478; s. c., 81 Mo. 325.    See also for a statement of the gist of the doctrine.    [Bartley v. Railroad, 148 Mo. 124, 140, 141.]

It is insisted, however, that the court should have directed a verdict for the defendant because of the negligence of plaintiff contributing to his injury, and the fact that he seated himself in the car near or adjacent to the open door, is insisted upon as one tending to establish culpable negligence on his part.    In considering this question, it is proper to say first, that under the proof made, the fact that plaintiff was seated in that portion of the car employed for express and mail, is entirely without influence on the question of contributory negligence for the reason all the proof shows that such portion of the car, instead of being forbidden, was, with the full knowledge and consent of the

defendant, occupied by passengers quite as much as the other portions thereof; and in this case, the conductor collected plaintiff's fare while he was seated therein. The pertinent facts to be considered, however, with reference to the matter of contributory negligence, assuming the plaintiff to be rightfully in that portion of the car, are that he was seated on the box near the door when he knew the train was divided in parts and the locomotive engaged in switching at the time. Of course this necessarily involved the knowledge that the coupling of the train would be had before it departed from that city, and that some considerable jerks and jars always attend such couplings. Now the standard by which negligence is measured and ascertained is the conduct of an ordinarily prudent man situated, in like circumstances. [Amer. Brew. Assn. v. Talbot, 141 Mo. 674, 685, 42 S. W. 679; Loehring v. Westlake Const. Co., 118 Mo. App. 163, 180, 94 S. W. 747.] And a party may be charged with negligence if his conduct falls short of that which would be ascribed to an ordinarily prudent man in a like situation. However this may be, the doctrine is firmly established in this State to the effect that before a court is authorized to declare negligence as a matter of law to the extent of precluding a right of recovery, the dangers attending the situation of the party must be such as to threaten imminent peril; that is, the situation assumed by him must be fraught with peril to his safety and portend calamity apart from and without the intervention of negligence on the part of the actor to threaten the injury. The dangers must be so obvious that an ordinarily prudent man would not assume the situation. [Spencer v. St. Louis Transit Co., 111 Mo. App. 653, 86 S. W. 593; Eikenberry v. St. Louis Transit Co., 103 Mo. App. 442, 80 S. W. 360; Wellmeyer v. St. Louis Transit Co., 198 Mo. 527, 95 S. W. 925.] There is no doubt the place chosen by plaintiff near the door should

have appeared to him somewhat unsafe, in view of the fact that he knew the coupling was to be made. The law always presumes correct conduct on the part of all concerned, however, and it was entirely proper for the plaintiff to presume that the coupling would be made without negligence, and therefore unattended with the results entailed by the negligent conduct which afterwards developed. We are unable to say that the place chosen by him for a seat was so obviously dangerous as to preclude his right of recovery, especially when it appears that defendant permitted passengers to occupy this compartment. Of course, had he known or had reason to believe that defendant's servants were about to make a coupling with gross negligence, he might, by exercising extraordinary care, have chosen a safer position in the car. The law required no more than the exercise of ordinary care for his own safety, however. [Hueselnkamp v. Railroad, 37 Mo. 537.] The several cases cited by defendant on this proposition are not in point. They all deal with facts where the party assumed a situation of greater danger than did the plaintiff in this case. The cases of Wait v. Railroad, 165 Mo. 612, 65 S. W. 1028, and Erwin v. Railroad, 94 Mo. App. 289, 68 S. W. 88, seem, upon a first reading, to declare negligence as a matter of law against a passenger under circumstances even more favorable to plaintiff than those disclosed in the proof here. Upon an attentive reading, however, it will appear that the judgment of the court in each was really given upon the proposition that the proof fell short of establishing negligence against the defendant. The matter of plaintiff's contributory negligence was only incidentally mentioned. At any rate, it seems their doctrine is not a sound exposition of the law with respect to contributory negligence on the facts in proof. The case was properly referred to the jury.

The defendant requested and the court refused its instruction No. 6, as follows:

"If you believe from the evidence that the plaintiff voluntarily assumed a position on or against the messenger's trunk at or very near the open door of the car in question, and that plaintiff knew said door was open and that, in such position he was liable to be thrown from said door by the coupling of cars to the train, and that there were other seats provided for his use, which he could have occupied with safety, and that by reason of his taking said position he was thrown from said car by the jerk or jar made by the coupling, then he cannot recover in this case and your verdict must be for the defendant."

The court modified the instruction by inserting the words "usual and ordinary" immediately before the word "jerk" in the latter part thereof, thus directing the jury that even though the plaintiff knew the car door was open and the coupling was to be made, and that in such position he was liable to be thrown from the car, he was still not precluded from a recovery unless he was thrown from the car by an usual and ordinary jerk or jar. It is urged this served to entirely eliminate the question of his contributory negligence on the case made from the consideration of the jury and was error. As modified, the instruction directed the jury that they should consider those facts only in case the plaintiff's injury was received as a result of an usual and ordinary jerk; that is, in case there was no negligence on the part of the defendant for if the injury was occasioned by an usual and ordinary jerk of a freight train, it was one of the risks assumed by the plaintiff and cannot be attributed to the defendant as resulting from an act of negligence. By this instruction as requested, the defendant no doubt sought to submit to the jury the proposition that even though the

defendant may have been negligent, yet if the plaintiff was guilty of a breach of ordinary care contributing to his injury, he could not recover.    This is a sound proposition of law but the instruction did not incorporate it.    To have given the instruction first requested would have been equivalent to directing the jury that the acts therein enumerated constituted negligence as a matter of law, and this too, notwithstanding a reasonably prudent man, exercising ordinary care for his safety, might have done likewise under the same circumstances. Plaintiff is to be held to the measure of care only which would be exercised by an ordinarily prudent person in a like situation.    The instruction wholly failed to refer the jury to the conduct of a reasonably prudent man and the exercise of ordinary care for his own safety as the standard of care and measure of duty  by  which plaintiff's neglect or care in that behalf should be ascertained.    It was therefore properly refused.    The instruction, as requested, having failed to properly declare the law with respect to contributory negligence, the court did not err in modifying it so as to destroy its purpose to preclude a recovery unless in the event there was no negligence on the part of defendant.    In such case, a recovery would have been precluded because of the failure to establish negligence on the part of defendant rather than for the reason    that    negligence should be attributed to the plaintiff.    The modification inserted by the court was to the end that the instruction should not amount to a direction precluding plaintiff's recovery unless the injury resulted from the usual and ordinary jerk of the train, in which case there was, of course, no negligence on the part of the defendant.    The modification was proper under the circumstances stated.

We have given attention to the  other  questions presented in the briefs and find them to be without suf-

ficient merit to justify prolonging the opinion. They will therefore not be discussed.

The judgment is affirmed. It is so ordered. *Bland, P. J.,* and *Goode, J.,* concur.