L. A. TICKELL, Respondent, v. ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILROAD COMPANY, Appellant.

St. Louis Court of Appeals, June 14, 1910.

1. **CARRIERS OF PASSENGERS: Injuries to Passenger: Freight Train: Standing in Aisle: Contributory Negligence.** Where no seats are available, a passenger who stands in the aisle of a caboose on a freight train is not guilty of contributory negligence as a matter of law.

2. ———: ———: ———: **Care Required of Carrier: Passenger Assumes Risks of Ordinary Jerks.** While a carrier of passengers on freight trains is bound to exercise the same degree of care for their protection as when conveyed on passenger trains, a passenger who elects to travel on a freight train assumes all the risks which usually attend the ordinary jerks and inconveniencies incident to such mode of conveyance.

3. ———: ———: ———: **Sudden Jerk: Res Ipsa Loquitur.** Where a passenger on a freight train is injured as the result of a sudden jerk, the doctrine of *res ipsa loquitur* does not obtain so as to require the carrier to acquit itself of negligence, in the absence of proof that the jerk was so extraordinary and unusual as would not happen if those having the management of the train had exercised a high degree of care.

4. ———: ———: Collision: Res Ipsa Loquitur. The fact that two railroad cars collide in and of itself suggests a breach of duty, from which a presumption of negligence arises, for if high care is exercised, such things do not occur in the usual course of operation.

Appeal from New Madrid Circuit Court.—*Hon. H. C. Riley,* Judge.

REVERSED.

*James F. Green* for appellant.

(1) There was no proof of any negligent handling of the train. Therefore, plaintiff was not entitled to recover. Hedrick v. Railroad, 195 Mo. 121; Portuchek v. Railroad, 101 Mo. App. 52; Erwin v. Railroad, 94 Mo. App. 289; Saxton v. Railroad, 98 Mo. App. 503; Young v. Railroad, 93 Mo. App. 274; Shields v. Railroad, 87 Mo. App. 645; Hite v. Railroad, 130 Mo. 139; Guffy v. Railroad, 53 Mo. App. 462; Wait v. Railroad, 165 Mo. 612; Barkley v. Railroad, 148 Mo. 141; Gabriel v. Railroad, 112 S. W. 711; Hawk v. Railroad, 130 Mo. App. 658; Wait v. Railroad, 165 Mo. 612. (2) There being no evidence justifying a verdict for punitive damages, the judgment for such damages is unwarranted. Dorsey v. Railroad, 83 Mo. App. 528; Barnett v. Railroad, 75 Mo. App. 446; Wamsganz v. Wolff, 86 Mo. App. 205; Hurt v. Railroad, 94 Mo. 255; Kennedy v. Railroad, 36 Mo. 351; Newman v. Railroad, 2 Mo. App. 404; Perkins v. Railroad, 55 Mo. 201; McKeon v. Railroad, 42 Mo. 79.

*Traylor & Baker* for respondent.

(1) When the plaintiff makes out a prima facie case, the onus is on the defendant to show by a preponderance of the evidence that the injury was not caused by the carelessness or unskillful management of defendant's employees in handling its train; such case should go to the jury, for them to pass upon the evi-

dence and facts. Daugherty v. Railroad, 9 Mo. App. 478; Brown v. Railroad, 13 Mo. App. 462; Routsong v. Railroad, 45 Mo. 236; Kelly v. Railroad, 76 Mo. 607; Kenny v. Railroad, 80 Mo. 573; Whitehead v. Railroad, 99 Mo. 263; McGee v. Railroad, 92 Mo. 208; Wagner v. Railroad, 97 Mo. 512; Guffy v. Railroad, 53 Mo. App. 426; Redman v. Railroad, 185 Mo. 1; Logan v. Railroad, 183 Mo. 582; Hempsley v. Railroad, 88 Mo. 348; Dimmitt v. Railroad, 40 Mo. App. 654; Clark v. Railroad, 127 Mo. 197. (2) The burden is then upon the carrier to repel the presumption arising from the casualty. Hepsley v. Railroad, 88 Mo. 348; Dimmitt v. Railroad, 40 Mo. App. 654; Clark v. Railroad, 127 Mo. 197.

NORTONI, J.—This is a suit for damages accrued to plaintiff on account of the alleged negligence of defendant in operating its train. Plaintiff recovered and defendant prosecutes the appeal.

Defendant is a public carrier of passengers and at the time of his injury plaintiff was a passenger on a freight train on which it carried passengers. A considerable number of persons boarded defendant's local freight train and were assembled in its caboose at Sikeston for the purpose of being conveyed to their homes in Morehouse, about six miles distant. The party had attended a funeral at Sikeston during the day and hence the large number. Because of their number, all of the seats in defendant's caboose were occupied and plaintiff, together with several other men and some three or four young ladies, was standing in the aisle of the car at the time of the mishap which gives rise to the pending suit. The negligence relied upon in the petition for a recovery is to the effect that defendant so carelessly and negligently operated its train as to suddenly stop it in such an extraordinary and violent manner as to cause an extraordinary jerk and jar which precipitated plaintiff to his injury. The proof shows plaintiff was standing

about four feet inside of the door of the caboose at the forward end of that car. The train was yet moving in defendant's yards at the town of Sikeston as though some switching or yard work was being done. A sudden stoppage of the train occurred by means of the application of the air-brakes, which now generally obtain throughout the country on freight trains, and plaintiff was precipitated backward through the door at the end of the caboose and against the iron railing inclosing the platform of that car. He received a slight wound on his head but no permanent injury, and the jury awarded him a verdict of $130 for the hurt. Of course, in the circumstances of the case, the mere fact that plaintiff was standing in the car should not be considered at all sufficient to charge him with negligence as a matter of law, for it appears that because of the number of passengers no seat whatever was available to him; but from a reading of the entire record, it is obvious the evidence fails to disclose a negligent breach of duty on the part of defendant for which it is liable to respond. The law is well settled to the effect that if a railroad company sees fit to carry passengers on its freight trains, it thereby assumes the duty to exercise high care for their protection identically as it does when the passengers are conveyed on its regular passenger trains, but while this is true, the rule obtains as well that one who submits to be carried on such trains assumes all of the risks which usually attend the ordinary jerks and jars and inconveniences incident to such a mode of conveyance. [Mitchell v. C. & A. R. Co., 132 Mo. App. 143, 112 S. W. 291; Hedrick v. Mo. Pac. R. Co., 195 Mo. 104, 93 S. W. 268; Wait v. O. K. C. & E. R. Co., 165 Mo. 612, 65 S. W. 1028.] There is not a word in the evidence before us indicating that there was any defect in the railroad track, equipment or appliances connected with the train or road. Indeed, the only theory for a recovery put forward is that defendant was negligent in suffering the sudden jerk of the train which occasioned plaintiff's

injury. It is said this of itself indicates negligence somewhere about the management of the conveyance for which defendant is liable to respond and that upon showing so much it devolved upon defendant to acquit itself. Defendant introduced no evidence whatever. At the conclusion of plaintiff's case, it requested the court to direct a verdict for it on the theory that the showing of fact was insufficient to send the case to the jury, for the reason the jerk or jar of the train was not shown to have been more than an ordinary occurrence incident and usual to the operation of such trains. It is entirely clear that no presumption of negligence sufficient to devolve the duty of acquitting itself on defendant may arise, unless the facts disclose such an extraordinary jerk or jar as would not happen if those having the management of the train had exercised high care in the circumstances of the case. So, before the doctrine of *res ipsa loquitur* may be invoked in aid of the verdict, something more than an ordinary or usual jar or jerk of a freight train must appear, which is essential to overcome the risk of ordinary jerks assumed by the passenger and suggest culpable negligence on the part of defendant. [Hedrick v. Missouri Pac. R. Co., 195 Mo. 104, 93 S. W. 268; Mitchell v. C. & A. R. Co., 132 Mo. App. 143, 112 S. W. 291.] However, plaintiff argues that under the ruling of this court in Fullerton v. St. Louis, I. M. & Southern R. Co., 84 Mo. App. 498, he made a prima facie case for the jury by merely showing a very sudden stoppage of the train without more. The authority relied upon is not in point, for while that case involved a sudden or violent concussion or jar of the train, which occasioned the injury complained of, it appears there was proof for the plaintiff that such violent concussion or jar was occasioned because of the collision of the caboose in which Fullerton was riding with a car which had been negligently left on a side track and protruded sufficiently to interfere with free passage of the train on the main line. The negligence declared

sufficiently established in that case was not the sudden
jerking of the train alone, but, instead, it was the negli-
gent act of defendant's servants in permitting the car
to stand on the side track in such a position as to oc-
casion a collision with the caboose in which the passen-
ger was being transported.   There can be no doubt that
the proof there showed negligence as a matter of fact
on the part of the railroad employees in permitting the
freight car to stand in such a position on the side track
as to occasion a collision, wholly irrespective of the pre-
sumption.   Furthermore, the fact of the collision with
another car on defendant's road in and of itself sug-
gests a breach of duty from which the presumption
of negligence arises; for, if high care is exercised, such
things do not occur in the usual course in operating
railroads.   [Dougherty v. Mo. Pac. R. Co., 9 Mo. App.
478; Trotter v. St. Louis & Sub. R. Co., 122 Mo. App.
405, 99 S. W. 508; Mitchell v. C. & A. R. Co., 132 Mo.
App. 143, 112 S. W. 291.]   In truth and in fact, in all
of those cases involving injuries to passengers occurring
by sudden jerks and jars of freight trains on which they
are being conveyed, it devolves upon the passenger to
prove something more than an ordinary and usual or
sudden jerk or jar of the train in order to support a re-
covery; for it is only on account of extraordinary and
unusual jerks and jars of such trains that plaintiff may
recover.   Other risks of that character he takes by be-
coming a passenger.   [Mitchell v. C. & A. R. Co., 132
Mo. 143, 112 S. W. 291; Hedrick v. Missouri Pac. R.
Co., 195 Mo. 104, 93 S. W. 268.]

There is no evidence whatever in the record before
us that the sudden stoppage of this freight train was
either extraordinary or unusual.   Plaintiff himself says,
"I stepped on the train at the depot when they stopped
to take on a couple of ladies; I started to walk into the
caboose and they started up slow and stopped suddenly
and I fell out of the door."   At another place in his
testimony he says, "It was a very sudden jar; I know

that." This is all of the evidence plaintiff himself gave on the issue. Another witness for him said, speaking of the train, "It seemed to stop all at once."

"Q. Well, did you see anybody fall down in the car? A. Yes, sir; I saw Annie Taylor.

"Q. Who else did you see? A. Another girl; I don't remember who it was."

The witness said these young ladies were standing in the body of the car and fell for that reason. The same witness, when describing what is alleged to be the negligent act, said "I consider it a pretty hard jolt." And this is the entire purport of the testimony of this witness. Another witness for plaintiff said the train was a long one consisting of many freight cars and of course there was considerable slack to be taken up, as in all cases of such trains, when it came to a stop. He said he could not say but he supposed the jar was from the slack in the train when the stop was being made. Another witness for plaintiff, in speaking of the occurrence said, "Well, it started and then there was a sudden jerk together." "Q. What kind of a stop did it make? A. A very sudden stop." Another witness for plaintiff testified the stop was very sudden. It jolted the passengers up considerably. The witness also said two ladies who were standing in the car fell down at the same time plaintiff fell backwards through the door. This is every word of testimony the record contains and relied upon to establish negligent conduct on the part of defendant in operating the train. From all the evidence it appears no one was injured in the least except plaintiff. The train was still at the station and engaged at work in the yards. Plaintiff knew this and every person who takes passage on a freight train knows and understands that such trains do a certain amount of switching in depot grounds, which involves pulling forward and suddenly stopping by means of air-brakes. By accepting passage on this train, plaintiff assumed the risk from such injuries as might befall him from the

ordinary and usual jerks and jars incident to moving the train and the usual sudden stops incident to work in the yards. The entire evidence shows the stoppage of the train amounted to no more than what is known as the "running up of the slack," which is always incident to the operation of freight trains supplied with air-brakes. The evidence relied upon to show the occurrence to have been extraordinary or unusual and thus suggest negligence on the part of those in charge of the train is not nearly so strong as that submitted to the Supreme Court in Hedrick v. Mo. Pac. R. Co., 195 Mo. 104, 93 S. W. 268, and in that case the proof was declared insufficient to support the verdict. In the Hedrick case, the plaintiff testified he had traveled a great number of times in cabooses attached to freight trains and on freight trains; that the jar which occasioned his injury was the severest he ever experienced on a freight train and that it was of sufficient force to upset the water tank in the caboose and spill the water therein on the floor. This proof the Supreme Court declared insufficient to suggest more than the ordinary and usual sudden jerk of such trains equipped with air-brakes, for it appeared therein, as it does here, the whole matter was superinduced by what is known as "taking up the slack." Such is a usual occurrence incident to such trains. Indeed, they cannot be operated without sudden jerks and jars from that source. Such are matters of common experience within the knowledge of all alike and until the witnesses at least say the jerk or jar which occasioned the injury was extraordinary and unusual, the case should not be submitted to the jury.

Under the Constitution, the case of Hedrick v. Mo. Pac. R. Co., supra, is conclusive on this court, and it is our duty to rule accordingly. The judgment is reversed. It is so ordered. All concur.