## FRANCES B. ALLISON, Respondent, v. St. LOUIS & HANNIBAL RAILWAY COMPANY, Appellant.

### St. Louis Court of Appeals, May 2, 1911.

1. **CARRIERS OF PASSENGERS: Injury to Passenger: Contributory Negligence: Standing in Aisle of Coach.** Where all the seats of a passenger. coach of a mixed train were occupied, so that passengers were compelled to occupy the aisle, a female passenger, who was standing near the end of the car, holding to the door casing to make her position secure, as best she could, and who was thrown on the floor and injured, by reason of the car being jolted while being coupled to another car, was not guilty of contributory negligence as a matter of law in assuming the position she did.

2. **———: ———: ———: Standing on Platform.** Where a passenger coach on a railway train is crowded and no seats are obtainable therein, a passenger who stands in a reasonably secure position on the platform is not guilty of contributory negligence as a matter of law. ·

3. **———: ———: Jolt of Car Caused by Coupling: Res Ipsa Loquitur.** Where a passenger, who is standing near the end of a passenger coach of a mixed train, is thrown on the floor and injured, by reason of the jolting of the car, caused by its being coupled to another car, the doctrine of *res ipsa loquitur* obtains.

4. **NEGLIGENCE: Pleading: Res Ipsa Loquitur: Effect of Pleading Specific Negligence.** The doctrine of *res ipsa loquitur* is unavailable to plaintiff where his petition charges specific acts of negligence against defendant.

5. **CARRIERS OF PASSENGERS: Duty of Carrier.** The obligation of a carrier to exercise high care for the passenger's safety, pertaining to the operation and conduct of the train, is the same, whether the passenger is on a regular passenger train, a mixed train, or a freight train, except in so far as it is modified by the circumstance of the different character of the train, of which fact the passenger has notice; and the duty of the carrier with respect to its roadbed, bridges, etc., is the same in all cases

6. **———: Mixed and Freight Trains: Risks Assumed by Passenger.** A passenger who voluntarily takes passage on a freight or mixed train assumes such risks as usually attend and are ordinarily incident to the movement and management of trains of that character, but he does not assume the risk of the carrier's negligence in breaching the obligation of high care for his safety.

7. ———: Injury to Passenger: Jolt of Car Caused by Coupling: Sufficiency of Evidence. In an action for injuries to a passenger, who was standing in a passenger coach of a mixed train and was thrown down and injured by reason of a jolt of the car, caused by its being coupled to another car, evidence *held* to justify a finding of actionable negligence in coupling the cars.

8. DAMAGES: Personal Injuries: $6000 Not Excessive. In an action for personal injuries, there was evidence tending to prove that, before her injuries plaintiff was active and enjoyed good health; that the injuries consisted of contusion of the spine and concussion of the brain, rendering her unconscious for several days, during which time she had fever and was delirious; that she was confined to her bed for more than two weeks, and was unable to move around by herself for a long time thereafter; that her entire body and limbs seemed to be paralyzed from her neck down, and the paralysis, after about one week's time, gradually receded, except as to the lower portion of the right leg; that at the time of the trial the movement of her left leg was not quite normal and her right leg was paralyzed, so that it dragged as she walked; that the injury resulted in such a nervous shock to plaintiff that she suffered loss of memory and ability to speak connectedly on any subject for a long time; that, while her condition improved under treatment for a short time, for two months prior to the trial no improvement appeared; and that the injuries were of a severe, permanent and highly dangerous character. *Held*, that a verdict for $6000 was not excessive.

Appeal from Ralls Circuit Court.—*Hon. David H. Eby*, Judge.

AFFIRMED.

*Reuben F. Roy* and *J. D. Hostetter* for appellant.

(1) The court should have given the instruction asked by defendant in the nature of a demurrer to the evidence at the close of the evidence, for the reason that the plaintiff was guilty of contributory negligence as shown by her own and her witness' testimony to the effect that she was suffering from nervous troubles, had been half a dozen times under physician's care when she was apparently unconscious from nervous trouble, and yet she stood in the doorway of the coach attached to

a freight train where she knew a jolt from coupling would occur, and did not notify defendant's employees of her condition of health and took no precaution to protect herself. Young v. Railroad, 39 Mo. App. 267. Said demurrer should have been given for the additional reason that evidence for plaintiff fails to show that she was thrown down by a jolt, but shows that she must have sunk down from nervous causes already existing, and the most that can be said in her favor is that it is by the evidence left to conjecture and the plaintiff must fail in her action because it devolves on her to make out her case. Young v. Railroad, 113 Mo. App. 636; Warner v. Railroad, 178 Mo. 125; Smart v. Kansas City, 91 Mo. App. 586. The mere fact that plaintiff may have been hurt by a jolt on defendant's mixed train does not make a prima facie case against the defendant. She must go further and show that the jolt was an extraordinary one attributed to defective machinery or negligent handling of train. Shields v. Railroad, 87 Mo. App. 637; Bartley v. Railroad, 148 Mo. 124; Hedrick v. Railroad, 195 Mo. 104; Wait v. Railroad, 165 Mo. 612. There was no competent evidence to show that the jolt was unusual or extraordinary. None of the plaintiff's witnesses had experience sufficient to make their opinion on that point of any value unless it was the witness Watts and his evidence fails to show it was in his opinion an unusual jolt. Dorsey v. Railroad, 83 Mo. App. 528; Gaffey v. Railroad, 53 Mo. App. 462; Ray v. Railroad, 126 S. W. 543; Hawk v. Railroad, 130 Mo. App. 658. (2) The damages assessed are grossly excessive. Wellman v. Street Ry., 219 Mo. 126; Briscoe v. Same, 222 Mo. 104.

*E. Lucas Alford, Ben E. Hulse, Barclay, Fauntleroy & Cullen* for respondent.

(1) There is no evidence in this case tending to show that plaintiff is guilty of contributory negligence. Before a passenger can be adjudged guilty of contributory negligence the danger must be so obvious that an

ordinary prudent person would not assume the situation. Mitchell v. Railroad, 132 Mo. App. 143; Spencer v. Transit Co., 111 Mo. App. 653; Eikenberry v. Transit, 103 Mo. App. 442; Wellmeyer v. Transit, 198 Mo. 527. (2) There is no proof in this case tending to show that the previous afflictions, if any, contributed to produce the injuries for which plaintiff seeks to recover damages. The proof is ample to show that her suffering was caused by the injury' received on the train. Herke v. Railroad, 141 Mo. App. 613; Wood v. Railway, 181 Mo. 433. (3) The carrier is responsible for its negligence in the operation of a freight train precisely as it is in the operation of its passenger train, and in no instance does a passenger assume the hazard and peril arising from the negligence or want of proper care of those in charge of the freight train, and with greater reason is this rule applied to passengers on mixed trains carrying regular passenger coaches. Mitchell v. Railroad, 132 Mo. App. 143; Hedrick v. Railroad, 195 Mo. 104; Wait v. Railroad, 165 Mo. 612; Erwin v. Railroad, 94 Mo. App. 289; Hawk v. Railroad, 108 S. W. 1119. (4) The proof in this case shows that plaintiff was thrown down as the direct result of an unusual and extraordinary jolt which could have been avoided by the exercise of even ordinary care and establishes negligence under the well established rules relating to passengers on mixed trains. Mitchell v. Railroad, 132 Mo. App. 143; Cook v. Traction Co., 144 Mo. App. 455; Tinkle v. Railroad, 212 Mo. 445; Choate v. Ry. Co. 67 Mo. App. 105; Fullerton v. Railroad, 84 Mo. App. 499; Guffy v. Railroad, 53 Mo. App. 465; Dorsey v. Ry., 83 Mo. App. 528; Tuly v. Railroad, 41 Mo. App. 436; St. Clair v. Railroad, 122 Mo. App. 528; Hawes v. Railroad, 111 Mo. App. 706; Murphy v. Railroad, 43 Mo. App. 342; Dougherty v. Railroad, 9 Mo. App. 478; Bartley v. Railroad, 148 Mo. 124; Holland v. Railroad, 105 Mo. App. 117.

NORTONI, J.—This is a suit for damages accrued to plaintiff on account of personal injuries received

through defendant's negligence. Plaintiff recovered and defendant prosecutes the appeal.

Defendant is a common carrier of passengers between the cities of Hannibal and New London, Missouri, and at the time of her injury, December 12th, plaintiff was a passenger on its mixed train. The train consisted of a locomotive, four freight cars, a baggage car and a passenger coach attached as the rear car in the formation of the train. Plaintiff took passage at Hannibal about four o'clock in the afternoon for her home in New London, a distance of ten miles, and paid her fare therefor to the conductor. It was on Saturday afternoon and the passenger coach was crowded, as is usual on such days in December, for many people residing at New London go to Hannibal for the purpose of Christmas shopping and return on this train, which appears to be defendant's regular train for the accommodation of the carriage of both local freight and passengers. It is conceded throughout the case that every seat in the coach was taken and a large number of persons, among whom was plaintiff and several other ladies, were standing in the aisle. Plaintiff, in company with another lady, stood in the rear end of the coach, holding to the frame of the door of the car, when she was suddenly precipitated backward upon the floor, through the force of a collision which occurred in making a coupling. The train had proceeded about three miles from Hannibal and had stopped at Oakwood for the transaction of business, where two coal cars on the sidetrack were attached to the engine and coupled on to that portion of the train standing on the main line. It appears the cars were supplied with automatic couplers and it is said the process of coupling such involves slight force, to the end of affixing a complete clasp or clamp of the coupling arrangement.

The negligent acts relied upon in the petition relate to the conduct of defendant's agents and servants in managing and operating the train while the coupling was

being made and, of course, included both the acts of the conductor, who it appears directed the movement, and those of the engineer who controlled the motive power. The conductor frankly admits that he knew the crowded condition in the passenger coach and that plaintiff, together with other ladies, was standing in the aisle and adjacent to the ends of the car because of the dearth of seating capacity, but notwithstanding directed and immediately supervised the coupling, which otherwise appears to have been accompanied with such an extraordinary collision of the cars and jar as to precipitate plaintiff backwards from her position on to the floor in a sitting posture and from thence backward until she lay prostrate thereon. From being so precipitated upon her back upon the floor of the car, plaintiff received serious and painful injuries, among which was a concussion of the brain, which resulted in rendering her unconscious a short time thereafter, in which condition she remained for about five days, or until the following Thursday.

The arguments advanced for a reversal of the judgment are two in number, the first of which goes to the effect that plaintiff should be declared negligent as a matter of law for assuming a standing position in the passenger coach, and the second urges there is no proof of negligence against defendant. Every witness in the case, including the conductor and others for defendant, gave testimony to the same effect, that all of the seats in the coach were occupied, and that plaintiff, together with other ladies, was standing near the end of the car and throughout the aisle between the seats, within the coach. It was not from choice or caprice that she stood thus, for all of the seats were occupied when plaintiff came into the coach at Hannibal, and she was therefore compelled to stand as she did. The rear door of the car was open, and it appears plaintiff was holding to the door casing, in order to make secure her position as best she could. In such circumstances, it is entirely clear that she should not be declared negligent as a matter of

law, for the position she assumed was not so hazardous as to forecast obvious danger. If authorities be required for a proposition so plain, they may be found in abundance, but the following will suffice: Tickell v. St. Louis, I. M. etc. R. Co., 149 Mo. App. 648, 129 S. W. 727; Harris v. Hannibal & St. Joseph R. Co., 89 Mo. 233. It must be remembered in this connection that plaintiff was within the coach in a proper position at the time. But in the circumstances of the case revealing the crowded condition of the car and the dearth of seats, she could not be declared negligent as a matter of law, even had she stood in a reasonably secure position on the platform instead. [Magrane v. St. Louis & S. R. Co., 183 Mo. 119, 130, 81 S. W. 1158; Elliott on Carriers (2d Ed.), sec. 1630a.]

But it is said, though plaintiff's right of recovery be not denied on the ground of contradictory negligence as a matter of law, the proof is wholly insufficient to support the judgment, because it reveals no more than a usual jerk ordinarily incident to the operation of such trains. In reply to this, the presumption of negligence is invoked in aid of the judgment and it is said that by showing the relation of passenger and carrier and the injury received, the burden was cast upon defendant to exculpate itself and this it has failed to do. The presumption involved in the doctrine of *res ipsa loquitur,* which otherwise would obtain on the facts of the case, is unavailable to plaintiff here for the reason the petition lays a charge of specific acts of negligence against defendant's agents and servants in directing and operating the train while making the coupling. Plaintiff having laid such negligent acts against defendant's servants, assumed the burden as well of introducing proof sufficient at least to afford a reasonable inference affixing a dereliction of duty against those managing and operating the train while performing the act which operated the proximate cause of the injury. [Gibler v. Q. O. & K. C. R. Co., 148 Mo. App. 475, 128 S. W. 791; Orcutt v. Cen-

tury Bldg., 201 Mo. 424, 99 S. W. 1062; Miller v. United
Rys. Co., 155 Mo. App. 528, 134 S. W. 1045.]

But after putting aside the presumption, we are en-
tirely clear the facts and circumstances in proof alone
afford sufficient evidence suggesting the negligence of
both the conductor and engineer in managing and exe-
cuting the coupling. We say this, too, with full appreci-
ation of the principle pertaining to the assumption of
risk, which attends the relation of passenger and carrier
when the passage is voluntarily taken either upon a
mixed or a freight train; for it appears the rule is identi-
cal with respect to the risk assumed by the passenger
on a train of either character. Whether the passenger
is one on a regular passenger train, a mixed train or a
freight train, the obligation of the carrier to exercise
high care for his or her safety pertaining to the operation
and conduct of the train is identical, except in so far as
it is modified by the circumstance of the different char-
acter of the train, of which fact the passenger has notice.
Touching the matter of roadbed, bridges, etc., the duty
of the carrier is absolutely the same, but as it is obvious
that the risk is greater in riding upon freight trains,
and that the same appliances and conveniences may not
be had as on trains equipped exclusively for the convey-
ance of passengers, the law, in a spirit of justice, modi-
fies the obligation of the carrier in its practical applica-
tion with respect to the rights of such persons as volun-
tarily take passage on freight or mixed trains, to the ex-
tent of casting upon the passenger such risks as usually
attend and are ordinarily incident to the movement and
management of trains of that character. However, the
obligation to exercise the highest practical degree of care
for the safety of the passenger continues throughout with
respect to such trains, modified only, as suggested, to
conform to the circumstance with which it reckons, per-
taining to the character of the train, and enjoins the duty
upon the carrier of operating and managing the train
without unnecessary or unusual hazard to passengers.

In other words, the duty of the carrier, except in so far as it is modified by the circumstance pertaining to the character of the train, obtains the same in all cases, and though the passenger assumes the risks of the usual jerks and ordinary sudden stoppages incident to the operation of freight trains and their switching about, in no instance does he take the risk of the carrier's negligence in breaching the obligation of high care for his safety. If it appear plaintiff came to her injury as the result of defendant's servants making a coupling in the usual manner, unattended with unusual force, then plaintiff may not recover, but, on the other hand, if the evidence suggests that those engaged in the act did not exercise high care thereabout but instead performed the task in such a manner as to occasion an unusual and extraordinary impact and rebound of the train which resulted in inflicting the injuries complained of, then her right of recovery is clear. [Mitchell v. Chicago & A. R. Co., 132 Mo. App. 143, 112 S. W. 291; Harris v. Hannibal & St. Joseph R. Co., 89 Mo. 233; Elliott on Railroads (2d Ed), sec. 1629.]

The matter must be viewed in connection with the fact that defendant's conductor himself supervised and directed the coupling of the cars, for he knew plaintiff and other ladies were standing in the car, and the requirement of high care for their safety suggested that he should see that a violent collision was not made. A number of passengers in the coach say the coupling was made with such force as to occasion a rebound of the car and sound like a "terrible crash." Besides plaintiff being thrown from her feet backwards upon the floor of the car, a number of passengers were thrown forward in their seats and a little child, three and a half years old, sitting on the lap of its mother, was thrown into the lap of another sitting immediately facing. A young man seated on the arm of one seat holding to the back of the same was precipitated upon the floor, and it is said a general commotion throughout the car occurred. A number

of witnesses who first qualified to speak on the subject by showing that they had traveled much on freight and mixed trains and made observations as to such matters stated the occurrence to have been an extraordinary and unusual jar or shaking up of the coach, exceeding any they had ever observed on other like trains. One witness, a railroad brakeman of several years' experience, who was a passenger in the same car, said the collision and consequent shakeup was the most severe he had ever witnessed about such trains when a coupling was being made; said it was unusual in character and attributed it to the engineer in not properly operating the locomotive. On these facts appearing in proof, we believe there is an abundance of evidence tending to prove negligence on the part of both the engineer and conductor, and the court did not err in declining to direct a verdict for defendant.

The jury awarded a recovery of $6000 and it is argued the verdict is excessive, for though it appears plaintiff suffered much and may be permanently injured, her condition results largely from her prior state of health. It is insisted plaintiff was but a frail invalid at the time of her injury and therefore her present condition is not to be attributed entirely to defendant's tort. There is evidence in the record tending to prove that plaintiff was a neurotic and sometimes became unconscious from fright or only ordinary suffering, but there is an abundance of proof as well that she was a sound, hearty, healthy woman at the time of her injury. Indeed, a number of her neighbors and friends testified that she enjoyed good health and was exceedingly active up to the very day of her injury. It is said she performed all of the duties pertaining to the housewife, doing her own work, besides raising chickens and keeping a cow. So the fact that she was an invalid is by no means conceded. The injury plaintiff received was a contusion of the spine and concussion of the brain which rendered

157 App—6

Allison v. Railroad.

her unconscious within a short time thereafter and she so remained from Saturday afternoon until the following Thursday. During this time she had some fever and was delirious. Besides her entire body and limbs seemed to be paralyzed from her neck down. Both her attending physician and defendant's chief surgeon who visited her during the time say she was insensible to the prick of a pin. She was confined to her bed for more than two weeks and unable to move around by herself for a long time thereafter. The paralysis of the body after about one week's time commenced to disappear and gradually receded except as to the lower portion of the right limb. At the time of the trial, the movement of her left limb was nearly, but not quite, normal whereas that of the lower portion of the right was paralyzed so that she dragged it as she walked. There is evidence that the injury resulted in such a severe nervous shock that plaintiff suffered the loss of memory and the ability to speak connectedly on any subject for a long time. For a short time, her condition improved under treatment but for two months prior to the trial no improvement whatever appeared and the attending physician expressed the opinion that her present paralytic and nervous condition was progressive and probably incurable. There is an abundance in the case tending to show the injuries are of a severe, permanent and highly dangerous character and we are not impressed with the argument that the verdict is excessive. The judgment should be affirmed. It is so ordered. *Reynolds, P. J.,* and *Caulfield, J.,* concur.