GILKEY *v.* LOUISIANA & ARKANSAS RAILWAY COMPANY.

Opinion delivered April 15, 1912.

1.  TRIAL—DIRECTED VERRICT—DETERMINATION.—In determining whether a verdict was properly directed for defendant, plaintiff's evidence should be given its strongest probative force. (Page 235.)

2.  MASTER AND SERVANT—DUTY TO EMPLOYEE ON HAND CAR.—Although a railway employee who is being transported to his place of work on a hand car is not a passenger within the common meaning of that term, the railway company owes him the duty of exercising ordinary care for

his protection, and he is bound to exercise such care for his own safety as a person of ordinary prudence would exercise under like circumstances. (Page 235.)

3. SAME—WHEN NEGLIGENCE AND CONTRIBUTORY NEGLIGENCE FOR JURY.— Where there was evidence tending to prove that a railway employee was injured while seated on the front end of a hand car which was being propelled by the section hands, and that his injuries were due to their negligence in jerking the car suddenly without warning to him, thus causing his feet to drop so that they were caught between the guard and main rail, the questions of defendant's negligence and plaintiff's contributory negligence should have been left to the jury. (Page 235.)

Appeal from Columbia Circuit Court; *Jacob M. Carter,* Judge; reversed.

*C. W. McKay,* for appellant.

1. It was appellee's duty to exercise ordinary care to provide appellant a reasonably safe place to ride upon the hand car. 97 Ark. 187; *Id.* 350; *Id.* 138. Also to give him proper instructions and warning of dangers. 90 Ark. 473; *Id.* 407; 73 Ark. 49. The presumption is, in the absence of instruction and warning of the danger, that appellant did not realize and appreciate the danger, and the burden of proof was on appellee to show that he did realize and appreciate it. 1 Labatt on Master & Servant, § 291.

2. Gilkey's testimony shows that the jolt to the car, resulting from the car operatives jerking or "snatching" the lever, threw him forward and caused his foot to be caught and injured. If true, their negligence was the proximate cause of the injury, and appellee would be liable. 100 Ark. 462; 93 Ark. 88.

There was a question of fact for the jury raised by the evidence, and the court erred in directing their verdict.

*Henry Moore* and *Henry Moore, Jr.,* for appellee.

1. Notwithstanding appellant's denial that his common sense and experience had taught him that it was dangerous to let his feet hang down where they could get caught by the guard rail, the court very properly refused to submit to the jury whether he was negligent in doing so or to have them decide whether he knew it was dangerous to allow his feet to hang down so they could be thus caught. It is self-evident that the danger was open and well known to every person of ordinary sense and intelligence. 82 Ark. 539; 97 Ark. 187.

2.   Even if the hands operating the car snatched on the lever and caused the jar or jolt, yet appellant could not recover, since in accepting employment as a section hand he assumed such risks as are usual and incident to the work.   56 Ark. 237; *Id.* 210; 68 Ark. 319.

HART, J.   Charlie Gilkey, a boy seventeen years of age, by his next friend, brought this action against the Louisiana & Arkansas Railway Company to recover damages for injuries sustained by him while in the company's employment.

Charlie Gilkey detailed the manner in which he received his injuries, substantially as follows: "I have worked as section hand for the Louisiana & Arkansas Railway Company altogether for seven months.   I first worked on the section three months and quit for three months.   I commenced again and had been working for the company about four months at the time I was injured.   Our section was several miles in length, and it was our custom to ride to and from our work on the hand car.   I was working under John Williams, the section foreman.   On the morning I received my injuries, I reported for work, and the section foreman told us to put the tools on the car and put the car on the track to go to our work.   The section foreman took his seat on the left hand side of the car on the front end.   He had a seat prepared for him.   The other section hands, except myself, propelled the car.   There was no room for me to assist them and the standing room between the levers was occupied.   I sat down on the front end of the car on the right hand side.   There was no room for me to stand up.   No instructions or warning was given me about the danger of sitting on the front end of the car.   I was hurt at Cornelius' spur, going north.   I was sitting on the front end; didn't have any place to stand at, and he never gave me any instructions. We was going down hill at full speed, and the car give a sudden jerk, and my foot caught between the guard rail and the main rail and threw me off and the car ran over me."   My left leg was broken above the knee, and I was otherwise bruised and injured.

CROSS EXAMINATION.

"Q.   Wouldn't your own common sense teach you that if you let your feet hang down and get one of them caught between the guard rail it would be dangerous and jerk it off?

A. No, sir; not then; since I got hurt, it would. I didn't have them hanging down in going over the hill; the jolt threw them down. I had ridden on the front end of the car a few times before, and the section foreman did not tell me to be careful. I knew how the guard rails were laid out, but never paid any particular attention to them. I did not appreciate that it was dangerous to ride sitting down on the front of the car until after I was injured."

Other testimony for the plaintiff tended to show that the car was going at about ten miles per hour when Gilkey was injured.

John Williams for the defendant testified: "Charlie Gilkey was sitting on the front end of the hand car with his feet hanging down at the time he was hurt. The car was going about six or seven miles an hour. This is not very fast for a hand car to run. The car did not give any sudden jerk when his foot hung between the guard rail. The car was in good order. The accident happened because Gilkey did not hold his feet up. I had cautioned all the section hands about the danger of riding on the front end of the car sitting down. I had particularly cautioned Charlie Gilkey about riding in this way. I had instructed him in regard to it on the morning of the accident. I told him to hold up his feet. I explained to him that he was liable to get his foot caught in the guard rail, and told him that it was dangerous at any time to let his feet hang too low. I had told him that he ought to stand up behind one of the men propelling the lever. I tried to get him not to set down, and told them all that it was safer for one to stand behind the other."

The other section hands testified in behalf of the defendant, corroborating the testimony of the foreman, John Williams. They all said that they had not been snatching the car at the time of the accident. They said if they snatched the lever that would cause a jolt in the car, and they had not snatched it a single time that morning, and that the car was running smooth at the time of the accident. They further stated that the foreman had directed them not to jerk the lever or snatch the car.

At the conclusion of the evidence, the court directed a verdict for the defendant, and the plaintiff has appealed.

In the case of *St. Louis, Iron Mountain & Southern Ry. Co.* v. *Harmon,* 85 Ark. 503, the court held (quoting from syllabus): "Although an employee being transported on a train to his place of work is not a passenger, within the common meaning of that term, the railway company owes him the duty of exercising ordinary care for his protection, and he is bound to exercise such care for his own safety as a person of ordinary prudence would exercise under like circumstances."

The question of the duty of the master to warn and instruct the servant on account of his age and inexperience does not arise in this case. The court gave a peremptory instruction for the defendant, and, in testing the correctness of this instruction, the testimony of the plaintiff must be given its strongest probative force. According to the evidence of Gilkey, he was not injured because he did not know that it was dangerous to ride sitting down on the front end of a hand car, but the injury happened because of the sudden jerk given to the car by the section hands propelling it. He said that he did not have his feet hanging down in going over the hill just before receiving his injury, but that the jolt, given by the men jerking the lever of the car threw them down, and that one of his feet was then caught in between the guard rail and the main rail. The evidence on the part of the defendant tends to show that it was not customary for the section hands to jerk or snatch the lever while they were propelling the car, and that the section foreman had instructed them not to do so.

From this testimony, the jury might have inferred that the injury happened to the plaintiff because of an unusual jerk given to the car by the section hands just before the injury was received. Neither can it be said, as a matter of law, that the situation assumed by the plaintiff in riding sitting down on the front end of the car was one which threatened imminent peril to him, apart from the subsequent negligent act of the section hands in snatching the car suddenly without any warning to him, and thus causing his feet to drop down so that they were caught between the guard rail and the main rail.

We conclude that, under the testimony introduced in the case, the question of the negligence of the defendant and the contributory negligence of the plaintiff should have been referred to the jury. *St. Louis, I. M. & S. Ry. Co.* v. *Wiggam,*

98 Ark. 259; *El Dorado & Bastrop Ry. Co.* v. *Whatley*, 88 Ark. 20; *Doss* v. *M., K. & T. Rd. Co.*, 116 S. W. (Mo. Court of Appeals) 458; *Mitchell* v. *C. & A. Ry. Co.*, 132 Mo. App. 143; 112 S. W. 291.

It follows that the judgment must be reversed, and the case remanded for a new trial.