JAMES D. FARMER, Respondent, v. ST. LOUIS, IRON MOUNTAIN AND SOUTHERN RAILWAY COMPANY, Appellant.

St. Louis Court of Appeals, December 2, 1913.

1. CARRIERS OF PASSENGERS: Mail Clerk is Passenger. A railway mail clerk, engaged in work on a train, is a passenger.

2. ————: Carriage of Passengers on Freight Train: Assumption of Risk. A passenger on a freight train assumes the risk of perils arising from such jolts, jars or lurches as are usually and ordinarily incident to the operation of such trains, but he does not assume the risk of perils occasioned by the negligence of the carrier, its agents or servants.

3. ————: Carriage of Mail Clerk: Assumption of Risk. Although a railway mail clerk, engaged in work on a train, is regarded as a passenger, and the carrier is required to exercise a high degree of care toward him, yet he assumes the risk of any danger to which he may be exposed on account or such jolts, jars or lurches as are incident to the ordinary and usual handling and operation of mail cars, whether occasioned by the coupling of cars or of an engine to the car, or otherwise; but he does not assume the risk of extraordinary perils to which he may be subjected by the negligence of the carrier or those in charge of its engine or train.

4. ————: Injury to Mail Clerks: Unusual Jar of Train: Res Ipsa Loquitur. Where a railroad mail clerk, engaged in work on a mail car, was injured by a fall, caused by a jar when the engine was coupled to the car, proof that the jar broke a window glass and lamp globes in the car and otherwise damaged it, and caused the other mail clerks to be violently thrown down, was sufficient to prove that the jar or impact was of quite unusual violence, warranting the submission of the case to the jury under the *res ipsa loquitur* doctrine.

5. RAILROADS: Unusual Jar of Train: Opinion Evidence. In an action by a mail clerk for injuries sustained in a fall, caused by an unusual jar when the engine was coupled to the mail car in which he was working, *held* that other mail clerks who were in the car at the time and who had been employed as mail clerks for periods ranging from two to seventeen years and who were familiar with the operation of mail cars and the jars and jolts ordinarily experienced when couplings were made, were qualified to express an opinion as to what impact or concussion was ordinarily incident to making couplings and as to

Farmer v. Railway Co.

whether the jar in question was more violent than was ordinarily incident to such an operation; *held, further,* that the testimony of these witnesses was in the nature of expert testimony, and that their opinions concerning the force of the jar or concussion was competent, in view of the fact that this was a condition that could not be specifically described.

6. **EVIDENCE:    Opinion Evidence:    Facts Forming Basis of Opinion.** A witness who gives his opinion upon matters within his personal knowledge or observation which are not susceptible of being specifically described should state the facts upon which his opinion is based, in order that the court and jury may determine whether the facts justify the conclusion reached.

7. **CARRIERS OF PASSENGERS:   Injury to Mail Clerk:   Unusual Jar of Train:   Instructions.** In an action by a mail clerk for injuries sustained in a fall caused by an unusual jar when an engine was coupled to the mail car in which he was working, the court instructed the jury, at the instance of plaintiff, that if they found that the engine ran into the mail car with *unusual violence* and that by reason thereof plaintiff was injured, they should find for plaintiff, unless defendant established by the preponderance of the evidence that "such collision could not have been avoided by the exercise of the greatest possible care exercised by those engaged in like business." *Held,* that if the instruction could be held to be defective for failing to require a finding that the violence with which the engine ran into the mail car was not only unusual but exceeded the margin of safety, such omission was cured by the instructions given for defendant, requiring a verdict for defendant, unless the jury found that the coupling was made in a negligent or careless manner, and requiring the jury to find, as a condition precedent to the return of a verdict for plaintiff, that his injury was not only the result of an extraordinary and unusual jar against the mail car, but that such jar was due to some defect in the engine, appliances, tracks or roadbed, or to the unskillful handling of the engine or train.

9. **INSTRUCTIONS: Defects and Omissions:   Cured by Other Instructions.** An instruction will not be held erroneous for the omission of material matters, where such omission is fully supplied by other instructions given.

Appeal from St. Louis City Circuit Court.—*Hon. George C. Hitchcock,* Judge.

AFFIRMED.

*James F. Green* for appellant.

(1) There was no proof as to any negligent or improper handling of the defendant's train or engine. Therefore, plaintiff was not entitled to recover. Tickell v. Railroad, 149 Mo. App. 652; Ray v. Railroad, 147 Mo. App. 332; Hedrick v. Railroad, 195 Mo. 121; Portuchek v. Railroad, 101 Mo. App. 52; Erwin v. Railroad 94 Mo. App. 289; Saxton v. Railroad, 98 Mo. App. 503; Young v. Railroad, 93 Mo. App. 247; Shields v. Railroad, 87 Mo. App. 645; Hite v. Railroad, 130 Mo. 139; Guffy v. Railroad, 53 Mo. App. 462; Waite v. Railroad, 165 Mo. 612; Barkley v. Railroad, 148 Mo. 141; Hawk v. Railroad, 130 Mo. App. 658. (2) The court erred in permitting witnesses, not experts, to testify as to the character of the coupling made on the night of plaintiff's injury, as compared with other couplings of mail cars. Koenig v. Railroad, 173 Mo. 698; Allen v. Transit Co., 183 Mo. 411; Koons v. Railroad, 65 Mo. 592; King v. Railroad, 98 Mo. 235; Winters v. Railroad, 39 Mo. 468; Guffy v. Railroad, 53 Mo. App. 462; Hoffman v. Railroad, 51 Mo. App. 273; Thompson v. Keyes Marshall Livery Co., 214 Mo. 487; Landers v. Railroad, 134 Mo. App. 80; Thomas v. Railroad, 125 Mo. App. 137; Heberling v. Warrensburg, 133 Mo. App. 544; Hawk v. Railroad, 130 Mo. App. 664. (3) Plaintiff's instruction No. 1 was erroneous. Flucks v. Railroad, 143 Mo. App. 17. (4) The court erred in giving plaintiff's instruction No. 3 on the measure of damages.

*Karl Kimmel* and *F. A. & L. A. Wind* for respondent.

(1) Where the petition pleads general negligence, as in this case, evidence that a passenger was injured by some unusual occurrence to which he did not contribute, makes a prima-facie case in an action for damages, and calls on the carrier to show, that the oc-

currence was not caused by its negligence. A postal railway clerk while working in a mail car is a passenger on a passenger train and entitled to all the rights of such. Mellon v. Railway, 105 Mo. 455; Furnish v. Railway, 102 Mo. 438; Condy v. Railway, 13 Mo. App. 588; Same case. 85 Mo. 79; Och v. Railway, 130 Mo. 27; Malloy v. St. L. Suburban, 173 Mo. 75; Mellor v. Railway, 105 Mo. 455. (2)   The question of the comparison of the shock or jar on this occasion with other coupling shocks and jars, was a subject of expert testimony, because it does not lie within the common knowledge and experience of jurors to know what shocks are produced by the coupling of engines to mail cars, and how such shocks disturb or affect railway postal clerks at work while standing in such cars. This subject could only lie within the knowledge of men experienced in railroading, such as railway postal clerks. Mitchell v. Railway, 132 Mo. App. 143; Goins v. Railroad, 47 Mo. App. 173; Monahan v. Clay & Coal Co., 58 Mo. App. 67; McNamara v. St. Louis Transit Co., 106 Mo. App. 349; Fisher v. Packing & Provision Co., 77 Mo. App. 108; Haworth v. Railway Co., 94 Mo. App. 215; Helferstein v. Medart, 136 Mo. 595.

ALLEN, J.—This is an action for injuries alleged to have been suffered by plaintiff, a railway postal clerk, while being transported as such upon one of defendant's trains, and caused by the negligence of defendant. Plaintiff recovered and the defendant prosecutes the appeal.

The charge of negligence laid against the defendant is that while plaintiff, in pursuit of his duties as a postal clerk, was standing in a mail car, which formed a part of a train of cars of defendant and which was standing in the train sheds at the St. Louis Union Station, the defendant negligently caused and permitted one of its road engines to come into violent collision with such train, thereby causing the plaintiff

to be thrown against a pouch rack in the car in which he was working, and causing him to fall and strike a letter case therein, whereby it is averred that he was painfully and permanently injured.

The answer was a general denial.

The evidence discloses that, at the time plaintiff received his injuries, he was a railway postal clerk, in charge of a mail car which was standing in the train sheds at the Union Station in St. Louis. It appears that this car, another mail car and a baggage car were standing upon a track, the two mail cars being south of the baggage car, and that the plaintiff was working in the second mail car, i. e., the one next to the baggage car. It appears that these three cars were situated some little distance down the track, south of and detached from the passenger coaches which were to compose the remainder of the train; the distance between the baggage car and the nearest passenger coach being, it is said, something like from fifteen to twenty-five feet.

The injuries which plaintiff received were due to the shock or impact received by the mail cars and baggage car when an engine backed in from the south and coupled on to the mail car immediately in front of the car in which plaintiff was working. It was in making this coupling that the engine is alleged to have come into violent collision with these cars. It seems that this train, consisting of these mail cars, baggage car and a number of passenger coaches, was shortly due to leave the St. Louis Union Station for the south, and was known as the "Cannonball," and is referred to as being one of the best trains on defendant's road.

When the engine made the coupling to the first mail car, plaintiff, in the second mail car, was standing in the "letter end" or north end of that car, and was distributing letters in a case consisting of pigeon holes. It appears that he was on the west side of this end of the car, and that just a few feet behind him was

a "pouch rack," made of gas pipe. Plaintiff testified that when the engine came in contact with the mail car ahead of him, it struck the cars violently, saying: "The engine hit the train and just drove it right under me;" that he fell back against the corner of the pouch rack, the latter striking him in the small of the back, and that he was bent backward over the rack and fell to one side across the car, his hip striking the west side of the car and one of the pigeon holes above mentioned. Plaintiff testified that, as he was in charge of that car, it was his duty to inspect the entire car, and that he did so upon taking charge of it that evening, and that he found everything about it in good order and condition at that time.

A number of railway postal clerks, who were working in the two mail cars in question at the time that the engine coupled on thereto, testified as witnesses for plaintiff. They all testified, in substance, that in making the coupling the engine was caused to run into the cars with unusual and extraordinary violence. They testified that in making such a coupling the jar is usually slight, and that frequently it is scarcely noticeable, if at all; but that on this occasion the shock was much out of the ordinary. One of these witnesses testified that the impact of the engine threw him against another man in the car, the latter preventing him from falling, but that he received quite a shock from which he did not immediately recover. Another testified that when the coupling was made he was thrown, but grabbed a rack and was thus prevented from falling, and that another man was thrown against him. Another said that the jolt caused him to move several feet, but that he did not fall because he was between the racks. Another testified that the jolt knocked him down, dazed him a little and gave him a headache; that he fell on a sack of mail which he had in his arms and which protected him, but that his watch crystal was broken and his watch case bent

by the fall. Another stated that the jolt threw him, but that he had hold of a heavy mail sack which prevented him from falling. And still another said that he was caused to move several feet, losing his balance, but that he grabbed something to keep from falling.

By some of these witnesses it was shown that, after the making of this coupling and the jar or jolt thereby caused, it was found that lamp globes in the car were broken, that a window was broken in the car in which plaintiff had been working, and in the end thereof in which he was standing at the time he received his injuries; and further that it was found that one of the end doors of this car could be but partly opened because of a bulging in the floor thereabout.

On behalf of defendant, its engineer, who had been in its employ since 1879, testified concerning the coupling which he made with his engine to the cars in question. He stated that in entering the train sheds his movements were controlled by signal lights, and that in approaching the cars in question there was a man stationed with a lamp to signal him. The latter did not testify. The engineer testified that he did not perceive that the coupling was made in any manner out of the ordinary, and said: "We make couplings as hard as that lots of times." This was the only witness offered by defendant who testified concerning the coupling on of the engine. The conductor of the train did not see the coupling made, and was not about these cars at the time. He testified, however, as to how such couplings are made, "the slack" that is in a train of this character, and that there is usually some jolt incident to coupling on an engine.

I Appellant contends that there was no proof of any negligent or improper handling of defendant's train or engine, and that therefore the plaintiff is not entitled to recover.

It cannot be doubted that plaintiff, engaged in working as a railway postal clerk in one of the cars of defendant's train, was a passenger thereon. [See Magoffin v. Railway Co., 102 Mo. 540, 15 S. W. 76; Mellor v. Railway Co., 105 Mo. 455. 16 S. W. 849; Lasater v. Railway Co., 177 Mo. App. 534.] However, it is quite clear that, though plaintiff was a passenger, he, by virtue of his employment as a railway postal clerk, assumed all of the dangers and risks necessarily attendant upon his transportation in a mail car, or incident to the work which the duties of his position required him to perform.

Though a railway postal clerk is to be regarded as a passenger, the obligation which the carrier assumes toward him is not necessarily the same as that which is owing to ordinary passengers who are being transported in passenger coaches. In this respect his position is somewhat analagous to one who takes passage upon a freight train, where such passenger is held to assume such risks and hazards as are ordinarily incident to the operation of trains of that character. By this it is not meant that the risks and hazards assumed are the same in the two instances, but that in each the obligation imposed upon the carrier is to some extent qualified because of the fact that the passenger must be held to assume certain risks. But in each the carrier is obligated to exercise toward such passenger that high degree of care generally imposed upon it with respect to its patrons, but subject to the limitations or qualifications mentioned.

Where one takes passage upon a freight train, he necessarily assumes the risk of perils arising from such jolts, jars or lurches as are usually and ordinarily incident to the operation of such trains; though he does not of course assume the risk of any hazards or dangers occasioned by the negligence of the carrier or its agents and servants. [See Allison v. Railroad, 157 Mo. App. 72, 137 S. W. 896; Tickell v. Railroad,

149 Mo. App. 648, 129 S. W. 727; Ray v. Railroad, 147 Mo. App. 332, 126 S. W. 543; Mitchell v. Railroad, 132 Mo. App. 143, 112 S. W. 291; Hawk v. Railroad, 130 Mo. App. 658, 108 S. W. 1119; Erwin v. Railroad, 94 Mo. App. 289, 68 S. W. 88; Wait v. Railroad, 165 Mo. 612, 65 S. W. 1028; Hedrick v. Railroad, 195 Mo. 104, 93 S. W. 268.] And it cannot be doubted that railway postal clerks must assume the risk of any dangers to which they may be exposed on account of such jolts, jars or lurches as may be incident to the ordinary and usual handling and operation of mail cars, whether occasioned by the coupling of cars, or of engines to such cars, or otherwise; but they do not assume the risk of extraordinary perils to which they may be subjected by the negligence of the railway company or those in charge of its engine or train.

In the instant case no specific acts of negligence on the part of defendant's agents and servants in charge of its engine or train were charged or attempted to be proved. On the contrary, plaintiff rested his case upon the evidence adduced by him tending to show that, upon the occasion in question, when it was sought to couple the engine to the front mail car, the latter was run into or against these cars with extraordinary violence; the plaintiff relying upon the application of the doctrine of *res ipsa loquitur,* or, in other words, that proof of the so-called collision of the engine with the cars in question raises a presumption of negligence on the part of the defendant in the operation of its engine and train, calling for explanation at its hands, and casting upon it the burden of showing its freedom from negligence in the premises.

We think it cannot be doubted that the doctrine of *res ipsa loquitur* may be invoked and relied upon by the plaintiff, in view of the evidence adduced by him. Such doctrine has been applied in precisely similar instances, i. e. in the case of making car couplings, even

where the train in question was a freight train, upon a showing that the jar or jolt occasioned thereby was very extraordinary and the violence or severity thereof quite beyond that ordinarily attendant upon such an operation. The applicability of this doctrine in cases of this character is fully discussed in Mitchell v. Railroad, supra, and it is unnecessary for us to attempt to add anything to what is there said upon the subject. And in Allison v. Railroad, supra, it was also held that this doctrine may be invoked in such a case.

In the case before us, plaintiff's evidence tended to show that the jar or jolt occasioned by the impact of the engine against the front mail car, in making the coupling, was one of such unusual violence as to be entirely out of the ordinary course of things, and such as would not have been present had its agents and servants who had the management and control of the engine and train exercised due care in the premises; thereby justifying the presumption, in the absence of explanation by the defendant, that the accident was occasioned by want of care on the part of such agents and servants of defendant.

Aside from the testimony of the mail clerks, in the nature of opinions of these witnesses, to the effect that the collision or impact of the engine with the mail cars was much more violent than is usual in making a coupling, the physical evidences of the violence thereof, as attested by these witnesses, tend very strongly to show that the manner of making this coupling was altogether out of the ordinary; for indeed it would be unreasonable to suppose that people would be violently thrown down, window-glass and lamp globes broken and the car otherwise damaged, in coupling on an engine in the usual and ordinary manner. Proof of such physical facts constitutes very convincing evidence that the jar or impact must have been one of quite unusual violence. And especially

is this true in view of the fact that this was not a freight train, but that these cars, as defendant showed, were to constitute a portion of one of the finest passenger trains on defendant's road, and that the coupling was made in passenger train sheds; it being fair to assume that an impact of the violence indicated by the evidence would not be ordinarily incident to making a coupling of this character under such conditions. In this connection appellant refers us to Tickell v. Railroad, Ray v. Railroad, Hawk v. Railroad, supra; Portuchek v. Railway Co., 101 Mo. App. 52, 74 S. W. 368; Erwin v. Railway Co., supra; Guffey v. Railroad, 53 Mo. App. 462; Saxton v. Railway Co., 98 Mo. App. 49, 72 S. W. 717; Hedrick v. Railway Co., supra; Wait v. Railway Company, supra, as well as to other cases. However, nearly all of the cases just cited involve the question of liability for injuries received by a passenger upon a freight train, occasioned by a jerk, lurch or jar of such train. And, whether it be freight or passenger train, liability was denied in each instance because the court held that there was no evidence adduced which tended to prove that the jerk, lurch or jar was, in fact, extraordinary and not usually incident to the ordinary careful and efficient operation of a train of the character in question in the particular case. An examination of all such cases convinces us that they are not authority for denying a recovery under the facts, circumstances, and conditions here shown in evidence. And other cases cited are not controlling.

II. Appellant assigns as error the rulings of the trial court in permitting plaintiff, and other railway postal clerks who were working in these mail cars at the time of the accident and who appeared as witnesses for plaintiff, to testify, over appellant's objections, as to the effect which the impact or concussion, attendant making this coupling, had upon the mail cars and the postal clerks upon them, as compared to that ordinarily experienced in such cases, and to compare

the jar or jolt on this occasion with that usually incident to such couplings. It is contended that it was error to permit these witnesses to thus testify as to the character of the coupling made on this occasion, as compared with other couplings of mail cars.

In Guffey v. Railroad, supra, to which we are referred by appellant in this connection, there was testimony that the jolt or jerk of a freight train was "of an unusual character," "heap harder than usual," and that it was more violent than common on freight trains. The court said: "None of these witnesses showed themselves sufficiently qualified by experience or observation to give an opinion as to what incidents are usual in the operation of freight trains operated by prudent and careful employees. We do not think these expressions of a witness are of any value whatsoever or constitute so much as a *scintilla* of evidence."

And in Hawk v. Railroad, supra, to which we are likewise referring, plaintiff depicted the jolt accompanying the stopping of a train as being a "terrible shock," "a severe shock, sufficient to knock the breath out of me." The court said: "These expressions of a *nonexpert witness* amount to nothing more than mere conclusions and possess no probative value." (Italics ours).

And in Ray v. Railroad, supra, the court said: "Plaintiff attempted to qualify as an expert witness in respect to shocks and jerks of freight trains by saying that he had 'considerable experience' on such trains, and had shipped stock over this road for seven years, *not testifying how often he accompanied his stock.* . . . . This plaintiff said the jerk was an unusual and extraordinary one, but the cases hold such expressions of opinion by a *nonexpert witness* are not of probative value." (Italics ours).

In the cases last above mentioned, the witnesses were not qualified to express an opinion as to the matter in hand. But in the instant case, the witnesses, whose testimony we now have under consideration, we think showed themselves qualified by experience and observation to express an opinion as to what impact or concussion was usually and ordinarily incident to making couplings of the character here in question. It appears that the plaintiff had been employed as a railway postal clerk for a period of about twenty-one years, and that the other witnesses whose testimony we are now considering were all experienced railway postal clerks. Two of them had been engaged in this occupation for more than two years, another more than six years, another about nine years, another about eleven years, another about twelve years, and another more than seventeen years. They were necessarily familiar by experience with the operation of mail cars, and with the jars or jolts which they experienced ordinarily when couplings were made. They testified as to the force of the jar or impact usually and ordinarily incident thereto, related their experiences on this occasion, and the effect which this jar had upon them and upon the car itself; and said that it was much more violent than was ordinarily incident to effecting a coupling.

The testimony of such witnesses is in the nature of expert testimony, or at least is the testimony of witnesses qualified by experience in the particular matter in hand, whose opinions may be received concerning the *force* of the jar or concussion, especially as the latter is something which could not be specifically described. Such opinions are based, not upon assumed facts, but upon the witness's personal knowledge or observations. It has frequently been held that, under such circumstances, the facts upon which the opinion is based should be stated by the witness, in order that

the court and jury may determine whether the conclusions based thereupon are real, and whether the facts appear to justify such conclusions. [See Jones on Evidence, (2 Ed.) Sec. 375.] Here the witness stated such facts, so far as they were susceptible of direct proof; and their opinions we think were not inadmissible or lacking in probative force.

These witnesses need not be regarded as experts, in the proper sense of that term, but their previous experience and observation had been such that they might properly testify to their inferences from the sensations experienced and the facts observed by them on the occasion in question; especially where the latter pertained to a matter, viz., the force of the concussion, as compared to that usually experienced, which could not be otherwise fully and adequately communicated to the jury. [See 17 Cyc. 185, 208, 209; T. & N. R. R. Co. v. Watson, 90 Ala. 68, M. P. Ry. Co. v. Martin, 2 Tex. App. (civil cases), 655.]

And though, in cases of this character where the case turns upon whether the jar or concussion was unusual and extraordinary, such opinions may appear to invade the province of the jury, we think, that upon principle and authority, and from the very necessities of the case, they are admissible.

III. A further assignment of error pertains to the giving of an instruction at plaintiff's request, which authorized a verdict for plaintiff if the jury found that the engine, in charge of defendant's servants and agents, ran into the postal cars with *unusual violence,* and that by reason thereof plaintiff was injured, unless the defendant established by a preponderance of the evidence that "such collision" could not have been avoided "by the exercise of the greatest possible care exercised by those engaged in like business."

This instruction is assailed upon the ground that the mere fact that the coupling was made with "unusual violence" was insufficient to establish negligence on the part of the defendant. And as to this proposition defendant relies upon Flucks v. Railroad, 143 Mo. App. 17, 122 S. W. 348. The latter was a case in which the plaintiff therein was a passenger, and alleged that he was injured by being thrown by a violent and unusual lurch of the car, while he was in the act of placing his hat in a rack therein. The negligence charged was that the defendant ran its train into and around a sharp curve at a high and excessive rate of speed, thereby causing the lurch which it was said threw and injured plaintiff. The court gave an instruction authorizing a recovery if the jury found that the lurch was caused by the negligence of defendant's servants operating the train, "in running it into and around a sharp curve at an unusually high rate of speed at said place."

This court held that instruction to be erroneous for the reason that it did not leave it to the jury to say whether the speed was an unsafe one, saying: "Defendant's servants were not negligent if they ran around the curve at a higher rate than was usual, provided they kept within the margin of safety; and they were negligent if they ran only at the usual rate provided it was an unsafe one." But the court was dealing with quite a different situation in that case from that which is here presented. There the defendant could not be convicted of negligence unless it ran its train into the curve at an excessive rate of speed and one that was unsafe. The mere finding that defendant ran its train at "an unusually high rate of speed at said place" was not sufficient under the pleadings or the theory upon which the case proceeded. In the case before us, the charge is that the defendant ran

its engine into the postal cars; the plaintiff charging this to have been a collision, and resting his case upon the presumption of negligence thereby raised. The evidence developed that the engine ran into these cars in the course of making a coupling thereto, and it then became a question whether the engine struck these cars with greater violence than was usual and ordinary in making such coupling; the plaintiff relying upon such extraordinary violence to raise a presumption of negligence in the handling of the engine and cars.

But conceding the instruction to be defective for failing to require the jury to find that the violence with which the engine was run into the postal cars was not only unusual but exceeded the margin of safety, we think such omission was cured by other instructions given in the case. Whatever may be said of the holding in the Flucks case, to the effect that the instruction there under consideration presented a theory radically wrong and that the error could not be cured by other instructions, we are satisfied that, under the pleadings and evidence in this case, the most that can be said against this instruction is that it fails to go far enough. Under the theory of the case presented by the pleadings it was necessary for the jury to find that the violence attending this coupling was unusual. The instruction required the jury to so find, but omitted to require a finding that the violence thereof was such as to be dangerous, whereby it may be said the jury was not required to find facts sufficient to raise a presumption of negligence on the part of defendant. But at defendant's request an instruction was given requiring a finding for defendant unless the jury found "that the manner in which defendant's employees made the coupling of the engine to the mail cars was negligent or careless, resulting in an unusual, extraordinary jar or concussion." And another instruction for defendant required the jury to find that plaintiff's injury was not only the result of an extra-

ordinary and unusual jar against the mail car, but that such jar or concussion was due to some defect or imperfection in the engine, appliances, tracks or roadbed, or to "the unskillful handling of the engine or cars." And still another instruction authorized a verdict for defendant if the jury found that plaintiff's injury was "the result of mere accident, in consequence of the coupling of an engine to the mail car." It would thus seem that any omission that could be complained of in plaintiff's instruction was fully supplied by those given for the defendant. For at most, plaintiff's instruction can only be said to have omitted to require the jury to find sufficient to raise the presumption that the jar was due to defendant's negligence. Defendant's instructions, however, supplied this omission by specifically requiring the jury to find that an unusual or extraordinary jar resulted from a negligent or careless coupling of the engine to the mail cars, and denying a recovery unless such jar was found to be due either to certain defects or imperfections, or to the unskillful handling of the engine and cars, and not the result of mere accident. That such omission in plaintiff's instruction may be supplied by other instructions in the case is in accordance with the decisions of our courts. [See Bliesner v. Reisemeyer Distilling Co., 174 Mo. App. 139, 157 S. W. l. c. 983; Jackson v. Telegraph Co., 174 Mo. App. 70, 156 S. W. 801, and authorities cited.]

Error is also assigned with respect to the instruction on the measure of damages, but appellant has pointed out no imperfection therein. We have examined this instruction and think it does not inhere with any reversible error.

As we have found no reversible error in the record the judgment should be affirmed. It is so ordered. *Reynolds, P. J.,* and *Nortoni, J.,* concur.