GEORGE A. KELLY, Respondent, v. AMERICAN CENTRAL INSURANCE COMPANY, Appellant.

St. Louis Court of Appeals, July 2, 1915.

1. **APPELLATE PRACTICE: Review of Admission of Evidence: General Objections.** Where evidence is not competent for any purpose, a general objection, with exception duly saved, is sufficient to preserve the matter for review, on appeal.

2. **WITNESSES: Impeachment: Evidence: Character of Parties.** The character of a party to a civil suit is put in issue only where evidence of good character is to be considered in assessing damages, such as actions for libel, slander, malicious prosecution, etc. In all other civil actions, the character of neither party is in issue unless assailed by some form of impeachment by his adversary; but where one of the parties assails the character of his adversary, through some recognized form of impeachment, it then becomes competent for the party so attacked to bring forward character witnesses to sustain his good repute.

3. ———: ———: ———. In an action on a fire insurance policy, charges made by defendant that plaintiff caused the property insured to be burned, in order to collect the insurance thereon, and that he was guilty of false swearing as to the amount of loss, did not constitute an impeachment of plaintiff, so as to authorize him to introduce character witnesses tending to prove his general reputation to be good.

4. ———: ———: **Prior Consistent Statements.** Where a cloud is cast upon a witness by cross-examination suggestive of a corrupt motive for his testimony, prior statements of similar import, consistent with his testimony, made before the supposed corruption occurred, may be shown in confirmation of his testimony.

5. ———: ———. A witness may be impeached by showing a corrupt motive for his testimony.

Appeal from St. Louis City Circuit Court.—*Hon. Rhodes E. Cave,* Judge.

REVERSED AND REMANDED.

*Fauntleroy, Cullen & Hay* for appellant.

*Jeptha D. Howe* and *Alphonso Howe* for respondent.

NORTONI, J.—This is a suit on a policy of fire insurance. Plaintiff recovered and defendant prosecutes the appeal.

Plaintiff conducted a saloon and grocery business at 4342 Lee avenue, St. Louis, and the policy sued on covers his stock of merchandise, consisting of wines, liquors, groceries and fixtures in the building therein described. The property so insured was destroyed by fire on June 5, 1911, and the company declined to pay the loss, for the reason, it is asserted, the assured caused the property to be burned.

In its answer, defendant charges plaintiff with arson—that is to say, that he instigated the burning of the property and employed one John H. Hessemann to communicate fire to it. A further defense set forth in the answer charges plaintiff with false swearing touching the extent of the loss under the policy. In endeavoring to maintain these two defenses set forth in the answer, defendant introduced much evidence tending to support them, and all of this, of course, reflected upon plaintiff's character.

In rebuttal, plaintiff introduced several character witnesses, in order to sustain his general reputation, and defendant objected to their giving such testimony. The court overruled the objection and permitted the witnesses to testify that plaintiff enjoyed a good reputation in the community for truth and veracity and also fair dealing. Defendant argues the court erred in this, and, indeed, we entertain that view. It is true defendant's objection to this testimony was general in character, but it will suffice. The testimony thus offered was not competent for any purpose, and such being true, a general objection, with exception duly saved, is sufficient to preserve the matter for review, on appeal. [See State v. Meyers, 99 Mo. 107, 12 S. W. 516; Beard v. Am. Car Co., 63 Mo. App. 382.]

In civil actions such as this, the character of neither party is in issue, unless assailed through some form of impeachment by his adversary. It is said that the character of a party to a civil suit is only put in issue in the class of cases, such as libel, slander, malicious prosecution, etc., in which evidence of good character is to be considered in assessing damages. [See Black v. Epstein, 221 Mo. 286, 304, 305, 120 S. W. 754; Vawter v. Hultz, 112 Mo. 633, 639, 20 S. W. 689.] If, however, in the trial of a civil case, where the character of a party is not in issue by the nature of the proceedings, the adverse party raises the question in respect of it, by assailing the character of his adversary through some recognized form of impeachment, it then becomes competent for such party so attacked to bring forward character witnesses to sustain his good repute. [See State v. Speritus, 191 Mo. 24, 34, 35, 36, 90 S. W. 459; Gourley v. Callahan, 190 Mo. App. 666, 176 S. W. 239.]

But, in cases, such as this one, where the issue made and tried renders essential the giving of evidence tending to reflect upon the character of the adverse party, such evidence and its effect are not re-

garded as taking on the form of impeachment, for, indeed, it is not introduced to that end, but rather relates solely to the issue on trial. [See Alkire Grocer Co. v. Tagart, 78 Mo. App. 166.] In this view, it is said, in a suit on an insurance policy, where the defense involves the charge of arson against the insured, that he is not permitted thereby to offer evidence of his good reputation in rebuttal. [See Stone v. Hawkeye Ins. Co., 68 Ia. 737, 56 Am. Rep. 870.] The principle is recognized and applied, too, by our own Supreme Court in Dudley v. McCluer, 65 Mo. 241, 27 Am. Rep. 273. In that case, though the defendant was charged with fraudulent representations, the court declared he was not permitted to introduce evidence of good reputation. It is clear that, though the plaintiff is charged with causing the property insured to be burned, in order to collect the insurance thereon, and likewise with false swearing in complying with the terms of the policy, to the end of revealing the extent of his loss, such charges do not constitute an impeachment, so as to authorize him to introduce character witnesses, tending to prove his general reputation to be good. The court erred in receiving this evidence. If plaintiff had been impeached through some of the recognized forms of impeachment apart entirely from the issue on trial, it would, no doubt, be otherwise.

In endeavoring to maintain its defense, defendant introduced one John H. Hessemann, who testified that, a few days before the loss occurred, plaintiff employed him to burn the property insured. Hessemann says that plaintiff agreed to pay him $100 for so doing and if he made a good job of it to pay him $200. In consideration of this, according to the evidence of Hessemann, he set fire to the stock insured, after saturating a portion with a quantity of gasoline, at the instance of plaintiff, under cover of night, between one and two o'clock in the morning, while plaintiff was absent therefrom. In the cross-examination of Hessemann, while

on the stand, plaintiff propounded numerous questions to him suggesting a corrupt motive on his part for so testifying. Among other things, plaintiff's counsel asked the witness, Hessemann, on cross-examination, what he had been paid for his services in the case and "What do you expect to be paid?", also, if he did not tell Patterson while in jail that the insurance company was going to take care of him. These questions and others of similar import, found in the cross-examination of the witness, are highly suggestive of a corrupt motive on the part of Hessemann for giving the testimony above referred to. However, Hessemann denied throughout that he expected to be paid by defendant and also that he had told one Patterson that the insurance company would take care of him. After a cloud was thus cast upon the witness, suggestive of a corrupt motive, defendant sought to introduce evidence of consistent statements made by Hessemann, tending to confirm the truth of his story, made a day or two before the fire. This evidence was excluded by the court on objection made, and an exception was duly saved by defendant to that ruling. The error in this is manifest, for though no proof was introduced tending to show Hessemann, the witness, had made inconsistent statements theretofore, a cloud was cast upon him as a witness through the imputation of a corrupt motive for giving such evidence.

Although it be true that prior statements, made before the trial, are incompetent, under the general rule, no one can doubt the exception thereto, that when the witness is impeached by showing statements theretofore made, inconsistent with his evidence given at the trial, prior statements of similar import, consistent with his testimony, later given, may be shown as in confirmation of the truth of the story he details on the stand. [See State v. Sharp, 183 Mo. 715, 82 S. W. 134; State v. Maggard, 250 Mo. 335, 157 S. W. 354.]

But the exception includes as well the right to give in evidence prior consistent—that is, similar—statements of the witness, when a cloud is cast upon him seeking to show a corrupt motive for his testimony, or that his story detailed at the trial is a recent fabrication. [See State v. Taylor, 134 Mo. 109, 155 156, 35 S. W. 92; Commonwealth v. Marshall, 211 Mass. 86, 97 N. E. 632.]

One form of impeachment is to show a corrupt motive on the part of a witness. [1 Greenleaf on Evidence (16 Ed.), section 450a.] In view of this, Mr. Greenleaf says, touching this precise question:

"Where the impeachment consists in a charge of bias or interest or corruption, there is value in showing a prior consistent statement before the time when the supposed bias or interest or corruption could have existed; for it thus appears that his present testimony cannot be attributed to bias or the like." [1 Greenleaf on Evidence (16 Ed.), section 469b.]

The exception with respect to this matter proceeds on sound reason and in accord with the principles of natural justice, for on the suggestion of a corrupt motive for such testimony coming in, it enables the party to rehabilitate the witness by showing that he had made the same statement at a time prior to any occasion for the corruption of the witness, and thus tends to remove the shadow so cast.

Here, defendant sought to show that the witness Hessemann communicated to Webster, some two or three days before the fire, that he had an opportunity to make $100 in that manner—that is, by firing the property at plaintiff's instance—and this we regard competent, in view of the corrupt motive attributed to him when on the stand, for it tends to show that he told the same story even before the insurance company, or any one representing it, had occasion to go about corrupting a witness in the matter of giving evidence touching a fire which had not yet occurred.

The judgment should be reversed and the cause remanded. It is so ordered. *Reynolds, P. J.,* and *Allen, J.,* concur.