STATE OF MISSOURI EX REL. STATE HIGHWAY COMMISSION OF MISSOURI, RESPONDENT, v. S. D. POPE, PEARL POPE, AND A. M. CURTIS, TRUSTEE, APPELLANTS.—74 S. W. (2d) 265.

Springfield Court of Appeals.   August 24, 1934.

*Farrington & Curtis* and *Paul W. Barrett* for appellants.

*Louis V. Stigall* and *Jean Paul Bradshaw* for respondent.

BAILEY, J.—This is a condemnation proceeding instituted by the State of Missouri, at the relation of the State Highway Commission, for the purpose of condemning certain lands of defendants for highway purposes. The highway in question lies at the eastern limits of Springfield and forms a connecting link between U. S. Highways 66 and 65. The petition to condemn the land required for the construction of this highway was filed August 6, 1932, and commissioners were duly appointed for the purpose of assessing the damages sustained by the landowners whose property was condemned, including the property of these defendants. The commissioners, after qualifying, held hearings, viewed the property and filed their report, assessing the damages sustained by each tract of land along the highway. The State Highway Commission filed exceptions to the report as to the assessment of damages to defendants' lands and a trial was thereafter had to a jury on the exceptions, at the January, 1933, term of the Greene County Circuit Court, resulting in an award of $600 damages. Defendants have appealed.

The evidence shows that in 1928 defendants S. D. Pope and Pearl Pope, his wife, purchased the property in question, described as Lots 1 and 2, Davis Place Addition to the City of Springfield, although it had not been laid out into town lots nor was there any plat thereof on record. It was an unimproved tract of land at the northeast corner of Glenstone and Schweitzer roads. Prior to the improvement Glenstone was a graveled road or street running north and south at about the eastern limits of the City of Springfield and was intersected by Schweitzer Road, also called ''Sunset Drive,'' at a point a short distance south and east of one of the finest residence districts of Springfield.

Prior to the condemnation the tract had a frontage of 300 feet north and south, facing Glenstone, and 234 feet east and west, facing Schweitzer Road. There were a number of substantial residences on Glenstone to the north of the Pope tract and the Springfield Country Club grounds were on the west, facing defendants' lands. There were also some substantial homes east of this property on Schweitzer Road. City water and electric current were available. While the lands were at the outer edge of Springfield, only partially within the city's limits, yet, being near the finest residence district of the city, they held, according to defendants' witnesses, a potential value as residence property of a more or less exclusive character. The lands were also said to be valuable for business purposes, being at the intersection of two important highways. While a plat had not been filed, as heretofore stated, the Popes had platted the land into lots with a view of selling them in the future. This plat showed five lots facing Glenstone, each with a frontage of sixty feet and a depth of 180 feet; also one lot fifty-four feet wide facing Schweitzer Road, with a depth of 300 feet. The five lots facing Glenstone were inside the city limits of Springfield.

The paved intersection of U. S. Highway 65, on Glenstone, and Route SD, on Schweitzer Road, as planned and constructed by the State Highway Commission, consisted of a straight right angle intersection of the two roads, with wide curving connections each direction, thus requiring more land than an ordinary road intersection. In order to carry out this plan the Commission condemned about .457 of an acre out of defendants' tract, which consisted of 1.54 acres, or about thirty per cent of the entire tract. A part of the land condemned was used only for what is termed a "sight view," hereinafter discussed.

On the question of damages we here quote from defendants' statement, which is correct.

"The Commissioners appointed by the court assessed the appellants' damages at $1,750 (Abs. 21) and a jury awarded them $600. The appellants' witnesses testified that the market value of the two lots before the highway was built on August 6, 1932, and the damage to the lots due to the building of the highway was as follows, respectively: Mr. Pope $6,000, $3,500; Val Mason $4,500, $2,000; Bert Ellis $3,500, $2,500; John Ferguson $5,000, $2,500; J. T. Hultsman $4,000, damage $4,000; M. M. Logan $5,100, $2,500; J. E. Cahill $5,000, $3,500; J. C. Vaughan $5,000, $3,000; and J. H. Snider, who formerly owned the tract, placed the value at $4,000 and the damage at $3,000.

The respondents' witnesses testified that the market value of the lots on August 6, 1932, the damage to the lots or the benefit to the lots was as follows, respectively: Roy Bedell $2,000, damage $600; U. G. Johnson, no estimate as to value, benefits equal to any damage; but no amount given; Harve W. Turner, value $2,000, no damage; John Schweitzer, value $1,500, damage $200 and J. W. Tippin value $1,500, no damage."

Other evidence, as to which there was some controversy, will be referred to in the course of this opinion.

The first assignment of error is as follows:

"The court erred in permitting counsel for the Highway Commission to ask appellants' witnesses on cross-examination whether or not their opinion as to the damage sustained by the landowner would not be different if they had known the law was that the landowners had a right to use the condemned land, build entrances across the ditch and otherwise use the condemned land. Also the court erred in permitting the Highway Commission to show that it was not using the land condemned for sight view."

The question rose in this manner: Mr. Val Mason, testifying for defendant, stated that in his opinion defendant's property had been damaged by reason of the condemnation and taking of said lands, in the sum of $2000. On cross-examination he further stated that the remaining tract might have made a good filling station site, but for the sight view. He further testified that, "a man couldn't cross that

(meaning the sight-view), with any kind of obstruction or build anything that would obstruct the view through there, so that spoils it for a filling station." At that point the following occurred:

" 'Q. If the law was such that you could go across here at any place, you could cross it, would that change your opinion as to the amount of the damages? A. Yes.

" 'Q. How much? A. I don't know what it would cost to build over that five foot cut.

" 'Q. Suppose you could put pipe across there for any distance you wanted to, and as long as you wanted to, at less than one dollar a foot, would that affect your testimony?'

"By Mr. Barrett: 'Object to that for the reason he is assuming that it is true. . . . I think he is assuming something the highway department can't do, and further they have condemned this land and taken it and he wouldn't have any more right to use it than the public; which objection is by the court overruled, to which ruling of the court the defendants then and there duly excepted at the time.' "

The suggestion is made that the objection to the testimony complained of came too late. It appears from the quotation above that the objection did come after the witness had answered the first question and the answer was unfavorable to defendants. It was then too late to object to the question and answer and the point was therefore not saved for review by this court. [Boulicault v. Oriel Glass Co., 283 Mo. 237, l. c. 247, 223 S. W. 423.]

In fact the only objection came in relation to the question regarding the cost of putting a pipe across the five foot ditch in front of defendants' property and not to the question as to the use of the sight view. Moreover, the question asked the witness did not assume that defendants had the right to use the sight view for anything more than ingress and egress to the remaining property. It is too clear for argument that defendants had that right within any reasonable limits, just the same as he would have had the right to cross the ditch to the highway had there been no land condemned for sight-view. It is equally clear that, since the state has the right to condemn land for "sight distances" (R. S. Mo. 1929, Sec. 8111), defendants would have no right to obstruct the sight-view by erecting a filling station thereon or any building, signboard or other obstruction. Having condemned the land in question, without any limitation as to surface use, it was at all times under control of the State Highway Commission and it could make such use of the land condemned as might be required. [Shell Pipe Line Corp. v. Woolfolk, 53 S. W. (2d) 917, 331 Mo. 410.]

The further point made, in this connection, that plaintiff was permitted to ask the witness Pope as to whether or not the highway department had removed any trees from the so called "sight view," was therefore incompetent in so far as it tended to indicate to the

jury that the highway commission had made no use of the land in question. The fact that they had not removed the trees would not prevent them from doing so at any time in the future and whether they had or not was immaterial. The witness, however, having answered that most of the trees had been removed, we are unable to perceive wherein defendants could have been prejudiced thereby.

The second assignment of error is as follows: "The court erred in permitting defendant's witness Johnson to testify that appellants' land was benefited in excess of any damage by reason of the increased traffic due to the construction of a concrete highway and in refusing their Instruction F, withdrawing from the jury this testimony."

Johnson was testifying as an expert on the value of the property remaining and the question arose on his direct examination as follows:

"Q. What would you say its fair, reasonable market value immediately after the improvement went in? A. Well, I think it is worth about as much now as it was before.

"Q. Would you make any difference? A. No. The property was damaged, of course, by cutting that little circle off there, but the fact that you have got a new farm-to-market road running east to Webster County, which will bring a world of trade, and 60 west on paved road, and got 65 going north and south, and for business for which the corner could be used, I think the increased traffic that would come by any business there would off-set the—

"By Mr. Barrett: We object to any statement about any increased traffic.

"By the Court: The objection is overruled. I think the witness may explain the reasons for his answer; to which ruling of the court the defendants then and there duly excepted at the time.

"By Mr. Barrett: On that point, increased traffic is a general benefit and not a special benefit.

"By the Court: The objection is overruled; to which ruling of the court the defendants then and there duly excepted at the time.

"By the Witness (continuing): I say that I think the increased traffic which makes the property valuable as a business site of any kind would off-set the damages on account of ground taken off by that circle—something like half an acre or something like that."

Plaintiff asserts that the assignment might readily be disposed of for the reason the trial court gave, i. e., that a witness may explain the reasons for his answer. Of course the general rule is that, where a witness testifies as to his opinion upon a matter within his personal knowledge, the facts upon which the opinion is based should be stated. [Farmer v. St. Louis, I. M. & S. Ry. Co., 178 Mo. App. 579, 161 S. W. 327.]

The rule has been applied in this State as to condemnation proceedings. [Missouri Pacific Ry. Co. v. Porter, 112 Mo. 361, 1. c. 369, 20 S. W. 568.]

However, in the latter case it was further held, in effect, that witnesses expressing their opinion as to value of property must base their opinion upon competent evidence and keep within the proper limits as to matters considered in forming their opinions. In other words, an expert witness, testifying as to the value of property, may and should give his reasons for such opinion, but in doing so he must base that opinion upon proper elements to be considered. [Wabash R. Co. v. Cockrell, 192 S. W. 443; Hook v. C. & A. Ry. Co., 133 Mo. 313, 34 S. W. 549.]

Certainly, under the guise of explaining an answer, a witness should not be permitted, at least on direct examination, to give testimony otherwise incompetent and thus place before a jury improper evidence to be considered by them in arriving at a verdict. The opinion of Mr. Johnson, that the property remaining after the condemnation was worth as much as the whole tract before the condemnation, was based, apparently, upon the proposition that increased traffic would make the property more valuable as a business site. The question then is, whether or not increased traffic, resulting from the building of a highway through an owner's lands, may be considered as a special benefit in arriving at the value of the property remaining after a taking under condemnation.

The law is now well settled in this State that in condemnation proceedings for highways, the owner, from whom is taken a part of his lands, is entitled to damages for the land taken and such damages as may result to the remaining lands by reason of the improvement, from which shall be deducted the benefits, if any, peculiar to the tract of land, arising from the running of the highway across the same. [State ex rel. v. Huddleston, 52 S. W. (2d) 33.]

It is further held that, "the fact that all who own land adjacent to the road enjoy special benefits does not make such benefit general. A special benefit to one tract on the highway does not become general, because a like benefit is enjoyed by many tracts that are also contiguous to the highway. The benefit accruing to each tract is special to it." [State ex rel. v. Jones, 15 S. W. (2d) 338, l. c. 341, 321 Mo. 1154.]

The great difficulty in such cases has arisen from attempts to specifically define special benefits, as distinguished from general benefits. Our Supreme Court recently pointed out that, "While the distinction is sometimes hard to draw, the rule in this State in the ordinary case is that special benefits are to be differentiated from general benefits by their nature or kind rather than by the amount or degree." [State v. Young, 23 S. W. (2d) 130, l. c. 135.]

In an early case the Supreme Court of Missouri held that the owner of lands, taken in a condemnation proceeding for a street, was entitled to, "any direct and special damages which might result to him by reason of the taking of the same, diminished by the amount of any special benefit which may accrue to him by reason of the im-

provement. *Speculative, remote, and consequential injuries and benefits are not to be allowed.''* (Italics ours.) [Springfield v. Schmook, 68 Mo. 394.]

It is generally held that special benefits to be available as a set-off in condemnation proceedings must be, *pro tanto,* a fair equivalent of the land parted with and the damage done, if any, and to that end must be special, not common; direct, not consequential; substantial, not speculative; proximate, not remote; actual and not constructive. [Mantorville R. & T. Co. v. Slingerland, 101 Minn. 488, 112 N. W. 1033, 11 L. R. A. (N. S.) 277; Betzeman v. N. Y. El. Ry. Co., 48 N. Y. St. 721, 20 N. Y. Supp. 628; Chicago v. Lonergan, 196 Ill. 518, 63 N. E. 1018; Childs v. New Haven & N. Co., 133 Mass. 253; 20 C. J., p. 821, sec. 258.] In 10 R. C. L., p. 159, it is said:

"There may be benefits of three classes arising from the construction of a public improvement; (1) general benefits, or those arising from causes which affect the entire community and perhaps raise the value of land in an entire city or town; (2) neighborhood benefits, or those accruing to a certain definite district by reason of its nearness to the improvement; and (3) peculiar benefits, or those affecting a particular estate by reason of its direct relation to the improvement. For example, if a new highway is constructed from the center of one city to a section of the State with which good road connection had previously been lacking, the benefit to the whole city by increased facility of communication with the outside world is the general benefit. The benefit to the district through which the new highway passes in increasing values for business use on account of the traffic upon the new highway is the neighborhood benefit. The benefit to a particular parcel by its being left in a desirable size or shape or in fronting upon a desirable street is the peculiar benefit."

It is our opinion, based upon the authorities above set forth, that benefits derived by reason of increased traffic resulting from the contemplated construction of a highway through the land condemned, are not properly to be considered as special benefits to the land. Such benefits are indirect, speculative, uncertain and remote, particularly where the highways were in existence before the condemnation. They are not capable of fair determination, and are more or less general in that they apply to the whole neighborhood through which the highway runs. Moreover, in considering damages to lands in condemnation proceedings, we have held that the danger, noise and other annoyances caused by increased traffic on a highway, are not elements of damage peculiar to the lands abutting upon the highway. [State ex rel. v. Watkins, 51 S. W. (2d) 543.]

It is equally true that increased traffic, so uncertain and difficult of determination and in a manner a general benefit to the whole neighborhood, for like reasons should not be considered a special benefit. It is therefore our conclusion that the opinion of the witness,

based on such hypothesis, was not competent, and that the instruction offered by defendants, directing the jury not to consider increased traffic as a special benefit, should have been given and that its refusal was error.

Defendants assign error because the trial court permitted plaintiff's divisional engineer to testify as to what it cost the State to lay one-half the pavement adjoining appellants' property and in refusing to strike that testimony from the record. It appears from the record that the pavement on Glenstone abutting plaintiff's property had been gradually widened in approaching the crossing so that it was forty feet in width of defendant's property. In taking the testimony of plaintiff's divisional engineer, J. J. Corbett, he was asked to tell the jury what was the reasonable cost of paving the state highway in front of defendants' property, to which defendants' attorney objected for the stated reason that it was ''immaterial'' and was ''put in solely to prejudice the jury.'' The objection was overruled and the witness testified that the cost would be about $2400 or $2500. Defendants then moved to strike out this testimony for the reason, ''it is absolutely immaterial and irrelevant and put in solely for the purpose of prejudicing the jury.'' Plaintiffs do not contend that such testimony as to the cost of the improvement would ordinarily be proper evidence for the consideration of a jury in cases of this character. Plaintiff contends, however, that the testimony was admissible in this case because defendants' counsel had previously asked their own engineer in regard to the cost of constructing an entrance way to the property and the testimony went in over the objection of plaintiff. We are inclined to think that testimony as to the cost of constructing an entrance way might be material in considering the expense that would be entailed in widening the entrance way, which had been constructed by the State, or in constructing a new one at a different place to make the remaining property available for use (10 R. C. L., p. 156), but are unable to perceive in what manner the cost of constructing the forty foot highway in front of defendants' property would be competent for any purpose connected with the question of damages and benefits. Such a question, in our opinion, should not be injected into a condemnation case. It raises a side issue that is misleading and likely to prejudice a jury by reason of the large and impressive amount thereof, causing them to lose sight of the main issue in the case, i. e., the difference in the market value of the property as a whole before the taking and the market value of the property remaining after the taking. We have made diligent search and have found no case where this question has been presented. But it is obvious that the question of the cost of an improvement should not be considered in estimating the benefits to the property involved, if the rules heretofore set forth are to be followed.

It is suggested that the evidence was admissible because defend-

ant Pope testified on cross-examination that he held the property for business purposes and that the streets abutting the property were run down and unpaved at the time the condemnation proceedings were instituted, and that therefore it was competent to show how much defendants might have been saved by reason of the improvement. No authority is cited in support of this theory. However, such testimony brings up speculative and uncertain matters which again we say are not to be considered in cases of this character. No one could know the character, width or cost of any pavement the city might have ordered at this particular place at some future and uncertain time. The mere fact that plaintiff brought out on cross-examination that defendants might have been compelled by the city to pay the cost of paving in front of his property, held for business purposes, does not, we think, make such evidence competent.

It is further suggested that defendants are in no position to raise the point because their objection to the evidence was too general. If the evidence objected to was incompetent for any purpose, which we think is true, the general objection was sufficient. [Kelly v. American Insurance Company, 192 Mo. App. 20, 178 S. W. 282; State v. Baldwin, 297 S. W. 10, 317 Mo. 759.]

Error is assigned because the trial court refused to permit defendants to show what the property cost them in 1928 and the amount of the mortgage held against the property. This evidence related to a time too remote to be of value or competent in estimating the market value of the property taken five years later and during a period when, as the court well knows, property had greatly depreciated in value generally. The value of the land condemned relates to the time of the appropriation. [Chicago, S. F. & C. Ry. Co. v. McGrew, 104 Mo. 282, l. c. 291, 15 S. W. 931; 20 C. J. 826.]

We find no error in the exclusion of this evidence.

The trial court gave plaintiff's instruction No. 1, which in part reads as follows: ''If you find and believe from the evidence that by reason of the location and construction of the state highway in question the market value of that portion of the property which remains is less than was the market value of the entire property without the said highway, you shall determine what damages, if any, are attributable solely to the location and construction of the road, and from such damages, if you find there are any, deduct the benefits, if any, accruing to the remaining portion of the property by reason of its abutting directly on the highway, and not enjoyed by other land not abutting on the highway.''

It is objected that this instruction improperly defines special benefits and assumes that defendants' property was benefited. It is sufficient to say that instructions defining special benefits in substantially that same form have been approved many times by our courts, and recently by this court. [State ex rel. v. Farmers' Estate, 68 S. W. (2d) 721; State ex rel. v. Jones, 15 S. W. (2d) 338, 321 Mo.

1154; State ex rel. v. ⌐ , 19 S. W. (2d) 465, 323 Mo. 339; State ex rel. v. Stoddard Gin ⌐ 2 S. W. (2d) 940.]

It is urged that the ver ∟t is against the weight of the evidence and that there is no evidence of special benefits to support the verdict. Without further reviewing the evidence we are satisfied there was substantial evidence of special benefits and the verdict of the jury on that question would therefore be binding upon this court.

For the reasons heretofore set forth we think the judgment should be reversed and the cause remanded for new trial. It is so ordered. *Allen, P. J.*, and *Smith, J.*, concur.